LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
(212) 465-1180
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAWLE BEATON, *on behalf of himself and all others similarly situated*, | Case No.: 20-cv-0672 |
| Plaintiff, | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| -against- | |
| VERIZON NEW YORK INC., | JURY TRIAL DEMANDED |
| Defendants. | |

**COMPLAINT**

Plaintiff RAWLE BEATON ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned attorneys, as and for his Complaint against Defendant VERIZON NEW YORK INC. ("Defendant"), states on information and belief as follows:

**INTRODUCTION**

1.  Plaintiff brings this action on behalf of himself and all others similarly situated to recover unpaid wages, overtime wages, liquidated damages, interest, and reasonable attorney's fees and costs under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*) and the wage orders promulgated thereunder by the U.S. Department of Labor and codified at 29 C.F.R. § 500 *et seq.* ("FLSA"), and Articles 6, 7, and 19 of the New York Labor Law and the wage orders promulgated thereunder by the New York State Department of Labor and codified at

12 N.Y.C.R.R. §§ 135-146 ("NYLL").

2. Plaintiff and others similarly situated worked for Defendant as safety escorts and other laborers. Plaintiff and others similarly situated regularly worked in excess of 40 hours per week for Defendant, but were not compensated properly for all of the hours they worked, or for their overtime hours.

3. Additionally, Plaintiff seeks damages and other relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), New York Executive Law § 296 ("NYHRL"), and New York City Administrative Code § 8-107 ("NYCHRL") for creating and fostering a hostile work environment through persistent racial discrimination against Plaintiff, and for retaliatory termination in response to his complaints about said discrimination.

4. Plaintiff was subjected to regular, virulent racial epithets and other abuse at the hands of a co-worker. Plaintiff repeatedly complained to management and others about this conduct, but his complaints were ignored and he was told to drop it. After years of such complaints, Plaintiff was accused of trying to start trouble and was summarily fired.

## PARTIES, JURISDICTION, AND VENUE

5. At all times relevant herein, Plaintiff was and is a resident of the State of New York, Kings County. Plaintiff's consent to sue is submitted herewith as Exhibit 1.

6. At all times relevant herein, Defendant was and is a domestic business corporation duly organized under and existing by virtue of the laws of the State of New York, and having its principal place of business at 140 West Street, New York, New York.

7. Defendant engages in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that Defendant transacts with customers and vendors located outside of New York and employees of

Defendant handle goods and materials produced outside of New York (including tools, machinery, electronics, and other items) that have moved in interstate commerce, and Defendant is thus an employer subject to the jurisdiction of the FLSA.

8. Defendant owns and/or operates service facilities at the following locations:

   a. 70 Central Avenue, Brooklyn, NY 11206;

   b. 1919 Neptune Avenue, Brooklyn, NY 11224;

   c. 19-19 46th Street, Astoria, NY 11105;

   d. 601 W. 26th Street, New York, NY 10036;

   e. 511 W. 18th Street, New York, NY 10011;

   f. 325 Exterior Street, Bronx, NY 10454;

   g. 111 Demerest Hill Road, Nanuet, NY 13126;

   h. West Albany Street, Oswego, NY 13126;

   i. 20 Post Road, Albany, NY 12205;

   j. 6360 Thompson Road, Syracuse, NY 13206;

   k. 6 Bank Street, Hornell, NY 14843;

   l. 2525 Geo Urban Boulevard, Depew, NY 14043;

   m. 105 Amfesco Drive, Plainview, NY 11803;

   n. 50 Engineers Road, Hauppauge, NY 11788;

   o. 630 Hicksville Road, Bethpage, NY 11714;

   p. 1620 Walden Avenue, Buffalo, NY 14225;

   q. 30 Milan Drive, Brewster, NY 10509;

   r. 215-01 42nd Avenue, Bayside, NY 11361; and

   s. 5 Station Road, Pomona, NY 10970.

9.     These locations are operated as a single enterprise. All such locations are engaged in related activities, share common ownership, and have a common business purpose. All of Defendant's service employees wear uniforms and use vehicles and equipment bearing Defendant's name and logo. Defendant provides the same terms of employment to employees at all locations pursuant to Defendant's collective bargaining agreement ("CBA") with Communications Workers of America, AFL-CIO District One ("Union").

10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under the FLSA and Title VII. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because those claims are related to Plaintiff's federal claims and form part of the same case or controversy.

11.    This Court has personal jurisdiction over Defendant in that it is incorporated in the state of New York and has its principal place of business therein.

12.    This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b), because the events giving rise to Plaintiff's claims occurred herein.

## JURY DEMAND

13.    Plaintiff demands a trial by jury of all issues so triable in this action.

## STATEMENT OF FACTS

*Wage And Hour Allegations*

14.    Defendant is a New York-based subsidiary of the Verizon Communications Inc. ("Verizon"), an international provider of communication services. According to its website, Verizon employs over 130,000 people in 150 locations worldwide, and reported revenues of over 130 billion in 2018.[1] Defendant is a wholly-owned subsidiary of Verizon, and provides Verizon

---

[1] *See* https://www.verizon.com/about/our-company (last accessed January 22, 2020).

services and equipment in the greater New York area.

15. Plaintiff worked for Defendant as an escort from January 2016 until April 4, 2019.  As an escort, Plaintiff was tasked with accompanying technicians on service calls and providing for their physical security.  He was paid a wage of $14 per hour until January 2018, and thereafter paid $15.43 per hour until the termination of his employment.

16. Over the course of his employment, Plaintiff regularly worked in excess of 40 hours per week.  Plaintiff's typical weekly work schedule was 7:30 A.M. until 4:30 P.M. Monday through Friday, for a total of 9 hours per day and 45 hours per week.

17. Plaintiff was required to report to work at 7:30 A.M. to clean the sidewalk in front of his place of work, but was not allowed to clock in prior to the start of his "official" shift at 8:30 A.M.  Plaintiff was also instructed to write down only his "official" work hours in the log book provided by Defendant.

18. Despite routinely working over 40 hours per week throughout his employment with Defendant, Plaintiff never received any form of additional compensation, either at her regular rate for the additional hours he worked, or at the overtime premium rate of one-and-one-half times his regular rate for his hours in excess of 40 per week.

19. Defendant's failure to pay Plaintiff was pursuant to a policy by which they failed to pay overtime to other employees similarly situated to Plaintiff, who regularly worked hours that were not recorded in Defendant's official payroll records.

20. No matter how many hours Plaintiff and others similarly situated worked, the wage statements Defendant provided to them showed only their "official" hours.  Defendant thereby failed to keep accurate payroll records and provided Plaintiff and others similarly situated with fraudulent wage statements in violation of the FLSA and NYLL.

21. Defendant was or should have been aware of its statutory requirements as an employer, including specifically but without limitation the requirements under the FLSA and NYLL to pay Plaintiff and others similarly situated for each hour they worked (and at the overtime premium rate for each hour worked in excess of 40 per week), and to make and preserve proper payroll records.

22. However, Defendant knowingly failed to pay Plaintiff and others similarly situated all of the regular and overtime wages to which they were entitled, and to make and preserve proper payroll records.

23. As such, the various violations of the FLSA and NYLL alleged herein were committed knowingly, willfully, and intentionally by Defendant.

24. Furthermore, these violations are ongoing, as Defendant continues to engage in the wrongful conduct described herein.

*Racial Discrimination Allegations*

25. In addition to the wage and hour violations, Defendant also created and fostered a hostile work environment in the form of regular and horrifying racial discrimination.

26. Plaintiff was regularly assigned to escort a service technician by the name of Anthony Labrado ("Labrado"). Labrado, who is of Caucasian descent, made frequent racially-inflammatory remarks towards Plaintiff, who is African-American.

27. Labrado regularly used the racial slur "nigger" in the presence of, and in reference to, Plaintiff. Labrado would call Plaintiff "nigger" to his face. If he wanted to locate Plaintiff, Labrado would often ask, "where is my nigger?" This question could be directed to co-workers, service customers, Plaintiff, or no one in particular.

28. Labrado was not Plaintiff's manager or supervisor, but treated Plaintiff like he

(Labrado) was Plaintiff's boss.  Labrado incorporated his racist behavior into this treatment by telling Plaintiff that he (Plaintiff) had to say "white power" at the end of every job before Labrado would let him go home.

29. Labrado also made Plaintiff clean up after him.  On one occasion after Labrado stepped in excrement, Labrado took his shoe off and threw it at Plaintiff and told him to "clean that shit."

30. Labrado's remarks and behavior were highly offensive to Plaintiff, and facing such treatment on a daily basis seriously disrupted Plaintiff's work and altered his working conditions.

31. Plaintiff complained to his manager Adolphe several times about Labrado's behavior, but nothing was ever done.  Instead of disciplining Labrado, Adolphe told Plaintiff to stop complaining or he (Plaintiff) would be fired.

32. Plaintiff complained to his Union representatives about Labrado's behavior, but the Union never did anything either to protect Plaintiff or to discipline Labrado.  Thus Plaintiff made a good-faith effort to resolve this matter through the Union and exhausted his administrative remedies thereby.

33. The CBA contains an arbitration agreement, but the provision makes no explicit reference to arbitrating charges arising under the FLSA, Title VII, or state labor or human rights laws.  Thus the CBA does not manifest a clear and unmistakable waiver by Union members of their rights to bring statutory claims in court.

34. In or around early April 2019, after another incident of racially-charged verbal abuse by Labrado, Plaintiff complained to Adolphe one last time about Labrado.  Rather than discipline Labrado for his egregious behavior, Adolphe accused Plaintiff of "trying to start a

war," and terminated his employment.

35. Plaintiff was traumatized by his experiences with Labrado, and has suffered from severe depression since his termination.

*FLSA Collective Action Allegations*

36. Plaintiff brings this action as a collective action pursuant to Section 16(b) of the FLSA on behalf of himself and all other non-exempt service employees (including specifically but without limitation escorts, field technicians, and technical assistants) employed by Defendant on or after the date that is six years before the filing of the initial Complaint in this case ("FLSA Collective Plaintiffs").

37. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper regular and overtime wages for their off-the-clock work. The FLSA claims of Plaintiff as stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

38. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA.  The FLSA Collective Plaintiffs are readily ascertainable.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant.  Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

*Class Action Allegations*

39. Plaintiff brings claims for relief under the NYLL pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other non-exempt service

employees (including specifically but without limitation escorts, field technicians, and technical assistants) employed by Defendant on or after the date that is six years before the filing of the initial Complaint in this case ("Class Period").

40. All said persons, including Plaintiff, are referred to herein as the "Class." The members of the Class are readily ascertainable. The number and identity of the members of the Class are determinable from Defendant's records. The hours assigned and worked, the positions held, and rates of pay for each Class member are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under Rule 23.

41. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, as the facts on which the calculation of that number would be based are presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class.

42. Plaintiff's NYLL claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendant of (i) failing to pay proper regular and overtime wages for off-the-clock work; and (ii) failing to provide proper wage statements that were in compliance with the requirements under the NYLL. Defendant's corporate-wide policies and practices affected all Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff sustained similar losses, injuries, and damages as other Class members, wth such injuries and damages arising from the same unlawful policies,

practices, and procedures.

43. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class.  Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

44. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources, while treating the claims as a class action would result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In

addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

45. When wage and hour violations arise, current and former employees are often afraid to assert their rights. Current employees fear direct or indirect retaliation by their employers, while former employees are fearful of damage to their current or future employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

46. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

  a. Whether Defendant employed Plaintiff and other Class members within the meaning of the NYLL;

  b. What are and were Defendant's policies and procedures regarding the types of work and labor for which Defendant did not pay the Class members properly;

  c. At what common rate, or rates subject to common methods of calculation, was and is Defendant required to pay the Class members for their work;

  d. Whether Defendant properly notified Plaintiff and other Class members of their hourly rate and overtime rate;

  e. Whether Defendant provided proper wage statements to Plaintiff and other Class members per requirements of the NYLL;

  f. Whether Defendant provided proper wage and hour notices to all employees per the requirements of the NYLL; and

  g. Whether Defendant properly compensated Plaintiff and other Class members for all hours worked under the NYLL.

## FIRST CAUSE OF ACTION
### (FLSA Collective Action)

47. Plaintiff repeats each and every previous allegation as if fully set forth herein.

48. At all relevant times Plaintiff and the other FLSA Collective Plaintiffs were employees of Defendant within the meaning of the FLSA, and were persons covered by and intended to benefit from the provisions of the FLSA.

49. At all relevant times Defendant was an employer within the meaning of the FLSA.

50. As alleged herein, Plaintiff and the other FLSA Collective Plaintiffs regularly worked well in excess of 40 hours per week for Defendant, but did not receive all of the regular and overtime wages to which they was entitled under the FLSA.

51. Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the other FLSA Collective Plaintiffs for all of the hours they worked, including overtime hours, when Defendant knew or should have known such was due.

52. As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and the other FLSA Collective Plaintiffs suffered damages in the form of unpaid regular and overtime wages. Plaintiff and the other FLSA Collective Plaintiffs seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the FLSA.

## SECOND CAUSE OF ACTION
### (NYLL Class Action)

53. Plaintiff repeats each and every previous allegation as if fully set forth herein.

54. At all relevant times Plaintiff and the other Class members were employees of

Defendant within the meaning of the NYLL, and were persons covered by and intended to benefit from the provisions of the NYLL.

55. At all relevant times Defendant was an employer within the meaning of the NYLL.

56. As alleged herein, Plaintiff and the other Class members regularly worked well in excess of 40 hours per week for Defendant, but did not receive all of the regular and overtime wages to which they was entitled under the NYLL.

57. Defendant also failed to provide Plaintiff and the other Class members with accurate wage statements, as required under the NYLL.

58. Defendant knew of and/or showed a willful disregard for the provisions of the NYLL as evidenced by their failure to compensate Plaintiff and the other Class members for all of the hours they worked, including overtime hours, when Defendant knew or should have known such was due, and their failure to provide Plaintiff and the other Class members with accurate wage statements.

59. As a direct and proximate result of Defendant's willful disregard of the NYLL, Plaintiff and the other Class members suffered damages in the form of unpaid regular and overtime wages. Plaintiff and the other Class members seek judgment in an amount to be determined at trial for these damages as well as an award of liquidated damages, interest, attorney's fees, and costs, as provided for under the NYLL.

### THIRD CAUSE OF ACTION
### (Title VII Discrimination)

60. Plaintiff repeats each and every previous allegation as if fully set forth herein.

61. At all relevant times, Plaintiff was an employee and a qualified person within the meaning of Title VII.

62. At all relevant times, Defendant was and continues to be an employer within the meaning of Title VII.

63. Pursuant to Section 703(a)(1) and (2) of Title VII, it is an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," or "to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

64. Pursuant to Section 704(a) of Title VII, it is an unlawful employment practice for an employer "to discriminate against any of his employees . . . because he has opposed[] any practice made an unlawful employment practice by this title."

65. As alleged herein, Defendant discriminated against Plaintiff with respect to the terms, conditions, and privileges of his employment through the creation and maintenance of a hostile work environment.

66. This hostile work environment was created and fostered through pervasive and regular racially-discriminatory slurs, comments, and behavior by co-workers and directed towards Plaintiff.

67. The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

68. Defendant was on notice of the conduct constituting the hostile work environment and took no action to resolve it.  Specifically, Plaintiff complained to his manager several times

about the abuse he was subject to, but management did nothing to stop it.

69. Rather than address the abuse against Plaintiff, Defendant fired him for complaining about it, in violation of Section 704(a) of Title VII.

70. The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

71. As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering.  Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of interest, attorney's fees, and costs, as provided for under Title VII.

## FOURTH CAUSE OF ACTION
### (NYHRL Discrimination)

72. Plaintiff repeats each and every previous allegation as if fully set forth herein.

73. At all relevant times, Plaintiff was an employee within the meaning of the NYHRL.

74. At all relevant times, Defendant was and continues to be an employer within the meaning of the NYHRL.

75. At all relevant times, Defendant had at least four persons in its employ, and therefore Defendant and its agents and employees were and are required to comply with the NYHRL.

76. Section 296(1)(a) of the NYHRL prohibits employers from discriminating against an employee because of race or color "in terms, conditions or privileges of employment."

77. Section 296(6) of the NYHRL provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts

forbidden under this chapter, or to attempt to do so."

78. Section 296(7) provides that it is an unlawful discriminatory practice "to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article."

79. Defendant violated the NYHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation and maintenance of a hostile work environment.

80. This hostile work environment was created and fostered through pervasive and regular racially-discriminatory slurs, comments, and behavior by co-workers and directed towards Plaintiff.

81. The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

82. Defendant was on notice of the conduct constituting the hostile work environment and took no action to resolve it. Specifically, Plaintiff complained to his manager several times about the abuse he was subject to, but management did nothing to stop it.

83. Rather than address the abuse against Plaintiff, Defendant fired him for complaining about it, in violation of Section 296(7) of the NYHRL.

84. The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

85. As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering. Plaintiff seeks judgment in an

amount to be determined at trial for these damages as well as an award of interest, attorney's fees, and costs, as provided for under the NYHRL.

## FIFTH CAUSE OF ACTION
## (NYCHRL Discrimination)

86. Plaintiff repeats each and every previous allegation as if fully set forth herein.

87. At all relevant times, Plaintiff was an employee within the meaning of the NYCHRL.

88. At all relevant times, Defendant was and continues to be an employer within the meaning of the NYCHRL.

89. At all relevant times, Defendant had at least four persons in its employ, and therefore Defendant and its agents and employees were and are required to comply with the NYCHRL.

90. Section 8-107(1)(a)(3) of the NYCHRL prohibits employers from discriminating against an employee because of race or color "in terms, conditions or privileges of employment."

91. Section 8-107(6) of the NYCHRL provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

92. Section 8-107(7) of the NYCHRL provides that it is an unlawful discriminatory practice "to retaliate or discriminate in any manner against any person because such person has [] opposed any practice forbidden under this chapter."

93. Defendant violated the NYCHRL by discriminating against the terms, conditions, and privileges of Plaintiff's employment through the creation and maintenance of a hostile work environment.

94. This hostile work environment was created and fostered through pervasive and

regular racially-discriminatory slurs, comments, and behavior by co-workers and directed towards Plaintiff.

95. The hostile work environment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's employment and/or create an intimidating, hostile, and offensive work environment for Plaintiff.

96. Defendant was on notice of the conduct constituting the hostile work environment and took no action to resolve it.  Specifically, Plaintiff complained to his manager several times about the abuse he was subject to, but management did nothing to stop it.

97. Rather than address the abuse against Plaintiff, Defendant fired him for complaining about it, in violation of Section 8-107(7) of the NYCHRL.

98. The discrimination described herein occurred with malice and reckless disregard of Plaintiff's rights.

99. As a direct and proximate result of said discrimination, Plaintiff suffered and continues to suffer actual damages in forms including specifically but without limitation loss of past and future earnings, mental anguish, and pain and suffering.  Plaintiff seeks judgment in an amount to be determined at trial for these damages as well as an award of interest, attorney's fees, and costs, as provided for under the NYCHRL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court assume jurisdiction herein and thereafter grant the following relief:

a. Designation of Plaintiff as representative of the FLSA Collective Plaintiffs;

b. Designation of this action as a class action pursuant to Rule 23;

c. Designation of Plaintiff as representative of the Class;

  d. Compensatory damages in an amount to be determined at trial, including unpaid regular and overtime wages, back and front pay, compensation for emotional distress and pain and suffering, and all other damages to which Plaintiff is entitled;

  e. Liquidated damages pursuant to the FLSA and NYLL;

  f. Punitive damages in an amount to be determined at trial;

  g. Pre- and post-judgment interest; and

  h. Plaintiff's costs and reasonable attorney's fees;

Together with such other and further relief as the Court deems just and proper.

Dated: February 6, 2020
   New York, New York

            LEE LITIGATION GROUP, PLLC

         By:  */s/ C.K. Lee*
            C.K. Lee
            Anne Seelig
            148 West 24th Street, 8th Floor
            New York, NY 10011
            (212) 465-1180
            *Attorneys for Plaintiff*