**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

RAWLE BEATON, *on behalf of himself and all others similarly situated*,

                    Plaintiff,

     v.

VERIZON NEW YORK INC.,

                    Defendant.

Case No. 1:20-cv-00672-BMC

**VERIZON NEW YORK INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF RAWLE BEATON'S MOTION FOR CONDITIONAL CERTIFICATION, EXPEDITED OPT-IN DISCOVERY, <u>AND COURT-SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

I.      THE COMPANY'S OPERATIONS ........................................................ 2

II.     THE COMPANY'S TIMEKEEPING POLICIES PROHIBIT OFF-THE-CLOCK
        WORK AND REQUIRE EMPLOYEES TO RECORD ALL TIME WORKED ........... 4

III.    PLAINTIFF'S EMPLOYMENT HISTORY ................................................ 5

ARGUMENT ................................................................................................... 6

I.      PLAINTIFF HAS OFFERED INSUFFICIENT EVIDENCE TO WARRANT
        CONDITIONAL CERTIFICATION OF ANY CLASS ...................................... 6

        A.      PLAINTIFF'S BURDEN AT THE CONDITIONAL CERTIFICATION STATE
                REQUIRES SOME FACTUAL SHOWING THAT THE PUTATIVE CLASS IS UNIFIED
                BY AN ALLEGED COMMON, UNLAWFUL POLICY/PRACTICE ................................... 7

        B.      PLAINTIFF'S ALLEGATIONS AND SOLE DECLARATION ARE INSUFFICIENT
                EVIDENCE OF A COMMON, UNLAWFUL POLICY/PRACTICE WARRANTING
                CONDITIONAL CERTIFICATION ................................................................. 9

                1.      Plaintiff's Own Experiences Are Inconsistent With the Common,
                        Unlawful Policy/Practice He Alleges ........................................ 9

                2.      Plaintiff's Alleged Common Unlawful Policy Contravenes the
                        Company's Lawful Policies Prohibiting Off-the-Clock Work ............... 10

                3.      Plaintiff's Declaration Does Not Contain Detailed Allegations or
                        Personal Observations As Represented In His Motion........................ 11

                4.      Plaintiff's Attempt To Rely On Conversations With Others Does
                        Nothing To Support His Motion ............................................. 13

                5.      Plaintiff Has Failed to Demonstrate That He Is Similarly Situated
                        to Any Tech................................................................ 16

                6.      Plaintiff, Moreover, Has Failed to Demonstrate that He Is
                        Similarly Situated to Any Other Escort or Tech Even Within The
                        Central Avenue Garage...................................................... 17

        C.      PLAINTIFF'S CITED CASE AUTHORITY IS INAPPOSITE ........................................... 18

II.     PLAINTIFF'S NOTICE AND DISTRIBUTION PLAN MUST BE REJECTED ......... 20

III.    PLAINTIFF'S REQUEST FOR TOLLING IS NOT WARRANTED ........................... 24

CONCLUSION.................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

CASES

*Barfield v. New York City Health and Hosps. Corp.*,
No. 05 Civ. 6319 (JSR), 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) ................................20

*Colon v. Major Perry St. Corp.*,
No. 12-cv-3788 (JPO), 2013 WL 3328223 (S.D.N.Y. July 2, 2013) ....................................17

*Colozi v. St. Joseph's Hosp. Health Ctr.*,
595 F.Supp.2d 200 (N.D.N.Y. 2009) ....................................................................................23

*Delgado v. Ortho-McNeil, Inc.*,
No. 07-CV-263 (CJC), 2007 WL 2847238 (C.D. Cal. Aug. 7, 2007) ..............................22, 23

*Diaz v. Electronics Boutique of America, Inc.*,
No. 04-CV-0840E (SR), 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ................................8

*Dilonez v. Fox Linen Service, Inc.*,
35 F.Supp.3d 247 (E.D.N.Y. 2014) .......................................................................................21

*Elamrani v. Henry Limousine, Ltd.*,
CV 2015-2050 (ERK) (MDG), 2016 WL 5477590 (E.D.N.Y. Sept. 28, 2016).......................2

*Engers v. AT&T*,
Civ. No. 983660 (SRC), 2007 WL 1557163 (D.N.J. May 24, 2007) ....................................23

*Feng v. Soy Sauce, LLC*,
15 CV 3058 (LB), 2016 WL 1070813 (E.D.N.Y. Mar. 14, 2016)..........................7, 12, 13, 15

*Guo v. Tommy's Sushi, Inc.*,
No. 14 Civ. 3964 (PAE), 2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014) .........................13, 15

*Guzelgurgenli v. Prime Time Specials, Inc.*,
883 F.Supp.2d 340 (E.D.N.Y. 2012) .....................................................................................19

*Hamadou v. Hess Corp.*,
915 F.Supp.2d 651 (S.D.N.Y. 2013)...........................................................................19, 20, 22

*Han v. Sterling Nat. Mortg. Co., Inc.*,
No. 09-CV-5589 (JFB) (AKT), 2011 WL 4344235 (E.D.N.Y. Sept. 14, 2011) ...............22, 23

*Hanchard-James v. Brookdale Family Care Centers*,
　No. 12 Civ. 1922 (BMC), 2012 WL 3288810 (E.D.N.Y. Aug. 9, 2012) ...............................22

*Harhash v. Infinity West Shoes, Inc.*,
　No. 10 Civ. 8285 (DAB), 2011 WL 4001072 (S.D.N.Y. Aug. 25, 2011) ..............................19

*Hoffman-La Roche Inc. v. Sperling*,
　493 U.S. 165 (1989) ..............................................................................................................7

*Iriarte v. Redwood Deli and Catering Inc.*,
　No. CV-07-5062 (FB) (SMG), 2008 WL 2622929 (E.D.N.Y. June 30, 2008) .....................19

*Khamrisiri v. George & Frank's Japanese Noodle Restaurant, Inc.*,
　No. 12 Civ. 265 (PAE), 2012 WL 1981507 (S.D.N.Y. June 1, 2012)...................................18

*Knox v. John Varvatos Enterprises, Inc.*,
　282 F.Supp.3d 644 (S.D.N.Y. 2017).....................................................................................24

*Li v. Chinatown Take-Out, Inc.*,
　16 Civ. 7787 (JCM), 2018 WL 1027161 (S.D.N.Y. Feb. 21, 2018).......................................16

*Lujan v. Cabana Management, Inc.*,
　No. 10-CV-755, 2011 WL 317984 (E.D.N.Y. Feb. 1, 2011) ...................................7, 8, 15, 22

*Montellano-Espana v. Cooking Light, Inc.*,
　14-CV-1433 (SJ), 2014 WL 12834855 (E.D.N.Y. Oct. 3, 2014) ..........................................17

*Morangelli v. Chemed Corp.*,
　10 Civ. 0876 (BMC), 2010 WL 11622886 (E.D.N.Y. June 17, 2010)...................................22

*Myers v. Hertz Corp.*,
　624 F.3d 537 (2d Cir. 2010).......................................................................................2, 7, 16

*Pefanis v. Westway Diner, Inc.*,
　No. 08 Civ. 002 (DLC), 2008 WL 4546526 (S.D.N.Y. Oct. 8, 2008)...................................18

*Qing Gu v. T.C. Chikurin, Inc.*,
　No. CV 2013-2322 (SJ) (MDG), 2014 WL 1515877 (E.D.N.Y. Apr. 17, 2014) ...................12

*Romero v. Producers Dairy Foods, Inc.*,
　235 F.R.D. 474 (E.D. Cal. 2006) .........................................................................................23

*Rotari v. Mitoushi Sushi, Inc.*,
　19-cv-5182 (BMC), 2020 WL 1289589 (E.D.N.Y. Mar. 18, 2020).......................................24

*Rudd v. T.L. Cannon Corp.*,
　　No. 3:10-CV-591, 2011 WL 831446 (N.D.N.Y. Jan. 4, 2011)...............................................8, 9

*Sanchez v. Gansevoort Management Group, Inc.*,
　　No. 12 Civ. 75 (KBF), 2013 WL 208909 (S.D.N.Y. Jan. 10, 2013) ......................................20

*Seever v. Carrols Corp.*,
　　528 F. Supp. 2d 159 (W.D.N.Y. 2007) ...................................................................................8

*Sobczak v. AWL Industries, Inc.*,
　　540 F.Supp.2d 354 (E.D.N.Y. 2007) ...................................................................................22

*Winfield v. Citibank, N.A.*,
　　843 F.Supp.2d 397 (S.D.N.Y. 2012)......................................................................................20

*Wing v. Empire State Auto Corp.*,
　　No. 14-cv-1491 (WFK) (VMS), 2015 WL 4603117 (E.D.N.Y. July 29, 2015).....................17

*Zhan v. Ichiban Group, LLC*,
　　No. 1:17-cv-148, 2020 WL 1030651 (N.D.N.Y. Mar. 3, 2020) ..............................................17

*Zheng v. Good Fortune Supermarket Group (USA), Inc.*,
　　No. 13-CV-60 (ILG), 2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013) ...........................7, 8, 12

## INTRODUCTION

Plaintiff Rawle Beaton ("Plaintiff") worked for Defendant Verizon New York Inc. ("Verizon New York" or "Company") as a temporary Field Technician Escort ("Escort") from January 2017 until April 2019, when he was terminated for being "off the job" without manager approval and subsequently lying during the Company's investigation into his whereabouts. During his employment with the Company, Plaintiff worked in one position (Escort) and at one Company garage (Central Avenue, Brooklyn).  He recorded his time worked on handwritten timesheets and, based upon the time that he reported, was paid overtime in approximately 50% of the weeks that he was employed.

Despite this, Plaintiff claims that the Company uniformly directed all Escorts and all Technicians ("Techs") throughout the state of New York – all of whom were *unionized employees* represented by the Communications Workers of America ("Union") – to record only their "official hours" while requiring uncompensated work to be performed prior to and/or after their scheduled shifts.  His request for this Court to conditionally certify a New York state-wide class of non-exempt Escorts and non-exempt Techs (without limitation as to Tech's duties of employment setting, *e.g.*, whether the Tech worked from a garage facility or were eligible to have an Escort accompany them in the field) would encompass hundreds of Company facilities, and include (combined across non-exempt Escorts and non-exempt Techs) thousands of current and former employees who, over a three-year period (the longest statute of limitations applicable to claims brought under the Fair Labor Standards Act ("FLSA")), reported to nearly a thousand different first-line supervisors (Local Managers) and second-line supervisors (Area Managers).

Plaintiff's so-called "evidence" supporting his Motion for Conditional Certification ("Motion") is insufficient to support his inherently individualized off-the-clock claims premised upon what Escorts and Techs were allegedly "instructed to note" regarding their hours worked

- 1 -

by unidentified individuals as to *any* class, let alone the exceptionally broad one he proposes. Plaintiff relies upon only his Complaint and solitary declaration that contain nothing but bare recitations of conditional certification catchphrases in the hopes he will divert this Court's attention from the foundational shortcoming of his papers: Plaintiff does not allege any facts to support that the Company maintained a "common policy or plan that violated the law," *Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir. 2010), much less that such a policy or plan is sufficiently widespread to justify conditionally certifying a state-wide class encompassing individuals working in different job titles, with different duties and, even among those in his same Escort job classification, individuals who worked under different supervisors and managers at different locations.  Conditional certification of any class "is not automatic." *Elamrani v. Henry Limousine, Ltd.*, CV 2015-2050 (ERK) (MDG), 2016 WL5477590, at *4 (E.D.N.Y. Sept. 28, 2016) (internal quotations and citation omitted).  Looking beyond Plaintiff's talismanic phrasing – as it must – to instead focus on what Plaintiff actually alleges, this Court should deny Plaintiff's request for conditional certification and court-ordered notice *in its entirety*.

## **BACKGROUND**

## I.    **THE COMPANY'S OPERATIONS**

As part of its business, Verizon New York provides voice, internet, and television services to residential and business customers in the state of New York.  (*See* Declaration of Susan Williams-Sias, ¶ 4 (hereinafter, "Williams-Sias Dec.").)  To support its operations, the Company maintains numerous facilities throughout the state of New York.  (*Id.* ¶ 5.)  The Company employs various types of Techs who typically work at locations corresponding to the nature of their role.  (*Id.* ¶ 6.)  Some Techs work in the field and are referred to generally as "Field Techs."  (*Id.*)  Field Techs are further differentiated by specialty (*e.g.,* repair, installation, construction, and splicing).  For example, the Company's Installation and Maintenance

- 2 -

Technicians ("I&M Techs") are a type of Field Tech that most often work out of "garage facilities" from which they are dispatched to perform jobs in customers' homes and businesses. (*Id.*)  I&M Techs are, among other things, responsible for testing, disconnecting, reconnecting, repairing, maintaining, installing, and rearranging telephones and other equipment (like inside wiring, pole wiring, underground wiring, and building terminals).  (*Id.* Ex. A, ¶¶ 7, 8.)

Escorts, the position Plaintiff held, are mainly responsible for riding with an I&M Tech to a job within a designated "two-person area" where they guard I&M Techs' Company property or possibly assist in other non-skilled tasks.  (*Id.* Ex. B, ¶ 10, 11.)  Such areas include buildings, neighborhoods, or general areas where there may be safety concerns requiring an extra person. (*Id.*)  As such, Escorts work only in garage locations within the New York City boroughs of Manhattan, the Bronx, Queens, and Brooklyn (*i.e.*, approximately 24 garages, not throughout the state) and only where I&M Techs also work.  (*Id.* ¶ 9.)  When there is no need for an Escort to accompany an I&M Tech on a given day or particular job, the Escort will perform various duties in the garage depending on the Company's needs (*e.g.,* assisting with reviewing shipments and stocking equipment) consistent with their job description.  (*Id.* Ex. B, ¶ 12.)

The majority of Escorts and I&M Techs are, in general, scheduled to work from 7:30 a.m. until 4:30 p.m., Monday through Friday, with an unpaid one-hour break each day for lunch. (*Id.* ¶ 32.)  As necessary, Escorts and Techs work overtime hours and, when they do so, are compensated with overtime premiums pursuant to the CBA and federal and state law.  (*Id.* ¶ 34.) It is typical for Escorts and I&M Techs to be divided into teams within their garage facility such that each team reports to a Local Manager.  (*Id.* ¶ 13.)  The Local Managers, in turn, report to an Area Manager.  (*Id.*)  Over the past several years, Company facilities within New York City boroughs where Escorts are employed have typically had between four to six Local Managers,

and one Area Manager, with teams of Techs and Escorts that have varied in size depending on the garage.  (*Id.* ¶ 14.)  For example, in the last three years, approximately 16 Escorts and 160 Techs worked in the Central Avenue Garage in which Plaintiff formerly worked; while across the New York City boroughs, in that same time period, the Company has employed approximately 300 Escorts and 4,500 Techs.  (*Id.* ¶ 15, 16.)  In contrast, considering the hundreds of Company facilities in New York state over the last three years, the number of first-line and second-line managers approaches a thousand with an even greater number of Techs (when all manner of non-exempt Techs are considered).  (*Id.* ¶ 16.)

Under the CBA, Escorts are classified as "Temporary Employees" whose period of employment generally will not exceed two years.  (*Id.* Ex. C, ¶¶ 17, 18.)  Techs, on the other hand, are "Regular Employees" whose period of employment is not subject to a limited timeframe.  (*Id.* Ex. C, ¶ 19.)  By virtue of their Regular Employee status, I&M and other Techs are eligible for benefits that Escorts are not, including the ability to participate in the Company's tuition assistance, 401k, pension, and basic life insurance programs.  (*Id.* ¶ 22.)  The CBA also addresses wage rates, which vary greatly between Escorts and Techs based upon the skilled versus non-skilled nature of their duties.  (*Id.* Ex. C at W173 (reflecting Techs' wage rates; W213 (reflecting Escorts wage rates); ¶¶ 20, 21 (Techs make up to four times more than Escorts).)  The CBA also includes a grievance and arbitration provision through which unionized employees can raise complaints with the aid of their union representative.  (*Id.* Ex. C, ¶ 23.)

## II.   THE COMPANY'S TIMEKEEPING POLICIES PROHIBIT OFF-THE-CLOCK WORK AND REQUIRE EMPLOYEES TO RECORD ALL TIME WORKED

Verizon New York has established policies strictly prohibiting off-the-clock work and requiring employees to report all time worked.  For example, the Company's Code of Conduct explicitly instructs employees:

> You must keep accurate records regarding your work time.  You
> may not instruct another employee to misreport or fail to report
> any time worked.  Overtime eligible employees must report all
> time worked.  By submitting your time, you are representing that
> you have not performed any work not reported.  You may report
> any questions about time reporting, or any concerns you have
> about the accuracy of your wages, including any claim that you
> have not been paid for all hours worked, or that any deductions
> from your wages are improper or in error, to Human Resources,
> the Verizon Services Payroll Department or to the VZ Compliance
> Guideline.

(*Id.* Ex. D, ¶ 24.)  Both Escorts and Techs receive training on the Code of Conduct, and Plaintiff

was trained on the requirements of the Code of Conduct twice within the first year of his

employment.  (*Id.* Ex. H, I; ¶¶ 29-31.)  In addition to the Code of Conduct, the Company

maintains "Work Rules" applicable to all of its Escorts and Techs. (*Id.* Exs. E, F, G; ¶¶ 26-28.)

These work rules are reissued yearly and, *inter alia,* always require employees to keep accurate

records of their time, state that "[p]roper completion of the daily time sheet and supporting

documentation is the responsibility of each individual associate," and provide guidelines for

employees' unpaid hour-long lunch breaks.  (*Id.*)  Like all of the Techs and Escorts, Plaintiff

received yearly training on the Company's work rules.  (*Id.* Exs. H, I, ¶¶ 30, 31.)

In the period of time relevant to Plaintiff's FLSA claim, Escorts and Techs have recorded

their time through different means.  (*Id.* ¶¶ 35, 39.)  Escorts record their time using paper

timesheets and submit their timesheets to their Local Managers who, in turn, submit these

timesheets to a Company representative who inputs the time as recorded into the Company's

timekeeping system.  (*Id.* ¶ 35.)  Techs record their time using Company-provided electronic

devices, which transmit their time directly into the Company's systems.  (*Id.* ¶ 39.)

## III.   PLAINTIFF'S EMPLOYMENT HISTORY

Plaintiff worked at the garage facility located at 70 Central Avenue in Brooklyn, New

York ("Central Avenue Garage") from January 23, 2017 until April 5, 2019.  (*Id.* ¶ 40.)  The

Central Avenue Garage is a dedicated "Installation and Maintenance" facility, meaning that the only Techs who worked at the facility were I&M Techs.  (*Id.* ¶ 15.)

Plaintiff was a low-performing and unreliable employee up until the time that he was terminated for being off the job without his supervisor's approval and lying to his supervisor regarding his whereabouts.  (*Id.* ¶ 40.)  There are no records indicating that Plaintiff ever filed a grievance regarding his pay, let alone the off-the-clock work allegations he makes in his Complaint.  (*Id.* ¶ 23.)  Like most other Escorts and I&M Techs at the Central Avenue Garage, Plaintiff's regular work schedule was 7:30 a.m. until 4:30 p.m., Monday through Friday, with a one-hour unpaid break for lunch during the middle of the day.  (*Id.* ¶ 33.)  In other words, Plaintiff was scheduled to work 40 hours per week.  (*Id.*)  As with other Escorts, Plaintiff recorded his own hours via handwritten timesheets.  (*Id.* Ex. J, ¶ 35.)  He recorded that he worked overtime hours and received overtime compensation in approximately 50% of the weeks that he worked at the Company.  (*Id.* Ex. K; ¶¶ 37, 38.)

## ARGUMENT

## I.    PLAINTIFF HAS OFFERED INSUFFICIENT EVIDENCE TO WARRANT CONDITIONAL CERTIFICATION OF ANY CLASS

As an initial matter, Plaintiff's claimed employment experience is inconsistent with the unlawful Company-wide policy he alleges.  He claims that Escorts and Technicians "were instructed to write down only their 'official' work hours in the logbook" and denied overtime pay outside of their schedule (Mot. at 2), but Plaintiff cannot deny that he recorded time worked outside of his scheduled 40-hour workweek in close to 50% of the weeks he worked for the Company.  (Williams-Sias Dec., Ex. K, ¶ 37).  On this basis alone, Plaintiff has failed to meet his minimal burden in demonstrating that he and others were similarly affected by the alleged common unlawful policy underlying his class claims.

Moreover, there is literally no substance to either (i) the minimal and boilerplate class allegations in Plaintiff's Complaint, which instead detail his own alleged experience (*see generally* Compl. ¶¶ 17-20) and (ii) the self-serving statements in Plaintiff's declaration regarding his supposed "personal observations" and "conversations."  Even a cursory examination reveals that Plaintiff has not presented the detailed allegations or first-hand observations as claimed in his Motion (*see* Mot. at 2-3, 9) but rather vague statements, unrelated to the specific unlawful common policy he alleges, many of which are filtered through multiple levels of hearsay.  Plaintiff is flouting even the lesser standards that exist for conditional certification thereby wasting the Court's resources.  His Motion should be denied it its entirety.

### A.    Plaintiff's Burden At the Conditional Certification State Requires *Some* Factual Showing that the Putative Class is Unified By An Alleged Common, Unlawful Policy/Practice

To obtain conditional certification, Plaintiff bears the burden to make a threshold showing that he is "similarly situated" to putative class members.  *See Zheng v. Good Fortune Supermarket Group (USA), Inc.,* No. 13-CV-60 (ILG), 2013 WL 5132023, at *4 (E.D.N.Y. Sept. 12, 2013).  Courts have discretion to determine whether a plaintiff's showing warrants conditional certification, *see Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989), but may authorize notice only if a plaintiff can make "a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555; *see also Zheng,* 2013 WL 5132023, at *4; *Lujan v. Cabana Management, Inc.,* No. 10-CV-755, 2011 WL 317984, at *4 (E.D.N.Y. Feb. 1, 2011) (same).

A plaintiff's burden at the conditional certification stage is not high; however, the "modest factual showing" necessary to obtain conditional certification "cannot be satisfied simply by 'unsupported assertions.'"  *Myers*, 624 F.3d at 555 (*quoting Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991); *see also Feng v. Soy Sauce, LLC,* 15 CV

- 7 -

3058 (ENV) (LB), 2016 WL 1070813, at *4 (E.D.N.Y. Mar. 14, 2016) (denying conditional certification in part where plaintiff merely stated that he "talked to several of his co-workers" and therefore knew that they did not receive minimum wages and overtime); *Zheng,* 2013 WL 5132023, at *6 (denying conditional certification where plaintiff relied solely "on the basis of the conclusory and unsubstantiated statements in her declaration and complaint"); *Lujan*, 2011 WL 317984, at *7 (finding that the "conclusory hearsay statements in two affidavits" was "scant evidence…insufficient to justify preliminary certification").

Moreover, where – as here – a company has existing written policies prohibiting off-the-clock work and requires that its employees record and be paid for all time worked, courts correctly deny conditional certification because class member claims cannot be efficiently resolved in one action without sufficient evidence of an unlawful corporate-level policy or directive. *See, e.g., Diaz v. Electronics Boutique of America, Inc.,* No. 04-CV-0840E (SR), 2005 WL 2654270, at *5 (W.D.N.Y. Oct. 17, 2005) (denying conditional certification of off-the-clock claim because it would "require an examination by the Court of when [each employee] was scheduled to work, when he actually worked, [and] whether he was paid for such," among other inquiries); *cf. Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 174 (W.D.N.Y. 2007) (denying notice where "there is little indication…that the FLSA violations alleged by plaintiffs were anything other than unilateral acts by a few 'rogue' managers").

Thus, even though a plaintiff's burden at this stage is low, Plaintiff still bears *some* burden and courts "must…take a measured approach when addressing a request for collective action certification, mindful of the potential burdens associated with defending an FLSA claim involving a large and broadly defined collective group of plaintiffs." *Rudd v. T.L. Cannon*

*Corp.*, No. 3:10-CV-591 (TJM/DEP), 2011 WL 831446, at *6 (N.D.N.Y. Jan. 4, 2011), *adopted by*, 2011 WL 830636 (N.D.N.Y. March 03, 2011).

### B.   Plaintiff's Allegations And Sole Declaration Are Insufficient Evidence of a Common, Unlawful Policy/Practice Warranting Conditional Certification

Plaintiff has failed to support his Motion with sufficient evidence of a common, unlawful policy or practice applicable to Escorts and Techs with different duties and different means of recording their time, working on different teams and under different managers, that (when combined), worked in hundreds of different facilities across the state of New York.

### 1.   Plaintiff's Own Experiences Are Inconsistent With the Common, Unlawful Policy/Practice He Alleges

Here, Plaintiff asserts one theory of FLSA liability:  that he and others were instructed to record only their "official" work hours but were required to perform work prior to and/or after their scheduled hours without compensation.  (*See* Beaton Dec., ¶ 12.)  As to himself, Plaintiff estimates that he was required to work off-the-clock for approximately five hours per week, because he allegedly was instructed not to record his time from 7:30 to 8:30 a.m., and instead told only to record an eight-hour day from 8:30 a.m. to 4:30 p.m.[1]  (*See* Compl. ¶¶ 16-18; Beaton Dec. ¶¶ 11-13.)  Specifically, Plaintiff states that he was required to "clean the sidewalks in front of his place of work" from 7:30 a.m. to 8:30 a.m. without compensation.  (Compl. ¶¶ 16-17.)  Plaintiff – **<u>falsely</u>** – alleges that he "never received any form of additional compensation, either at her [sic] regular rate for the additional hours he worked, or at the overtime premium rate of one-and-one half times his regular rate for hours in excess of 40 per week."[2]

---

[1] While generally courts do not look at the merits at the conditional certification stage, Plaintiff's false claims do not amount to a credibility or merits determination.  His own handwritten time sheets show that he recorded his time beginning at 7:30 a.m. (*see* Williams-Sias Dec., Ex. J, ¶ 35) and Plaintiff's allegations entirely ignore that he was provided with a one-hour unpaid lunch break each day.

[2] *Compare* Compl. ¶ 18 *with* Williams-Sias Dec., Ex. K (indicating Plaintiff was provided with overtime payments in approximately 50% of the weeks that he worked for the Company).

Thus, as a preliminary matter, Plaintiff's factual allegations simply do not square with the records that Defendant has already provided, which prove that Plaintiff was compensated for overtime when overtime premiums were due.[3]  (*See* Williams-Sias Dec., Ex. K, ¶ 38.)  Further, Plaintiff's own handwritten timesheets reflect (1) that he understood that he was supposed to begin recording his time at 7:30 a.m. each day, and (2) that he, when applicable, recorded overtime hours.  (*Id.* Exs. J, K, ¶¶ 35, 37-38.)

## 2. Plaintiff's Alleged Common Unlawful Policy Contravenes the Company's Lawful Policies Prohibiting Off-the-Clock Work

Aside from his own experience, Plaintiff only vaguely asserts that his allegedly unlawful experience was common to other employees because "[i]t was Defendant's policy to require employees to work off the clock and not compensate employees for that time spent working." (Beaton Dec. ¶ 11.)  Given the Company's policies that are designed to ensure all employees are paid for all of their time worked, Plaintiff essentially alleges that managers directed Escorts and Techs to work off the clock *in contravention* of established policy.  Against that backdrop, Plaintiff's "evidence" leaves too many open-ended, individualized questions to show a common unlawful policy even at the conditional certification stage.  By way of example, Plaintiff completely elides how (or in what words) any individual manager actually directed any individual Escort or any individual Tech regarding recording their time, whether Escorts and Techs followed that direction, why or why not they did so or whether they did so in all or some instances, or whether they complained to their union steward who would have been contractually obligated under the CBA to provide representation regarding such matters.

---

[3] Given this, it is unclear what Plaintiff's counsel references when they write that "Plaintiff has provided payroll records revealing this improper compensation scheme."  (Mot. at 9-10.)  Plaintiff has provided neither Defendant or the Court, as part of its Motion or otherwise, any records evidencing an "improper compensation scheme."  Indeed, the only records provided in this case – by Defendant – demonstrate that Plaintiff was properly compensated for all hours worked, including with overtime premiums.  (*See* Williams-Sias Dec., Ex. K, ¶ 38.)

In particular, Plaintiff does not even allege the name or names of the Local or Area Manager(s) responsible for directing him (or any other Escorts or Techs) not to record certain hours or that the Local or Area Managers' actions were the result of a corporate-wide directive, despite being well aware of his Local and Area Managers' names and the names of other Local and Area Managers. (*Compare* Compl. ¶ 31 (Plaintiff naming his manager in the context of his individual claims) *with* Compl. ¶¶ 17-19 and Beaton Dec. ¶¶ 7, 11-12 (devoid of any managers' names in the context of his FLSA claims).)

### 3. Plaintiff's Declaration Does Not Contain Detailed Allegations or Personal Observations As Represented In His Motion

The single declaration Plaintiff submits in support of his Motion (his own) amounts to nothing more than smoke and mirrors that fail to conceal its fatal flaws. To begin with, Plaintiff's general statements about what he claims to "know" are self-serving and unsupported. For example, Plaintiff states that he "know[s] that technicians and technician escorts worked at various locations were not paid for all of the hours worked [sic]," but that he "cannot recall many of the names." (Beaton Dec., ¶ 6.) Plaintiff adds that he "know[s] that there are other employees who work or worked at VERIZON NEW YORK INC. who were not paid their proper wages by Defendant…" and that he "believe[s] that all of the technicians and escorts working in New York" suffered from Defendant's allegedly unlawful policy of not paying employees for all of their hours worked. (*Id.* ¶ 17.) But there is simply no basis for Plaintiff's claimed "knowledge" or his "belief." He offers no specific facts whatsoever about who these other employees are (*e.g.,* their names, their positions, or their hours worked), who their managers are/were, whether he has witnessed them work uncompensated hours prior to or after their regular shift, or whether such employees ever told him that they were not compensated for all of their hours worked).

- 11 -

This Court should disregard these empty allegations, which are precisely the type of "vague, conclusory, and unsupported allegations that are an insufficient basis for conditional class certification." *Weng v. Kung Fun Little Steamed Buns Ramen, Inc.,* 17 civ. 273 (LAP), 2018 WL 1737726, at \*4 (S.D.N.Y. Mar. 26, 2018). Where, as here, Plaintiff "fail[s] to provide specific factual allegations, courts routinely deny leave to send a collective action notice." *Qing Gu v. T.C. Chikurin, Inc.,* No. CV 2013-2322 (SJ) (MDG), 2014 WL 1515877, at \*3 (E.D.N.Y. Apr. 17, 2014) (denying conditional certification where plaintiff failed to meet their obligation to provide "some probative information regarding similarly situated employees such as their names, their duties, and their hours worked"); *see also Feng,* 2016 WL 1070813, at \*4 (denying conditional certification, in part, where plaintiff merely stated that he "talked to several of his co-workers" and therefore knew that they did not receive minimum wages and overtime); *Zheng,* 2013 WL 5132023, at \*6 (denying conditional certification where plaintiff relied solely "on the basis of the conclusory and unsubstantiated statements in her declaration and complaint").

Similarly, there is nothing behind Plaintiff's allegations regarding a common, unlawful policy. Plaintiff again makes the bare-bones statements that "[i]t was Defendant's policy to require employees to work off the clock and not compensate employees for that time spent working," (Beaton Dec. ¶ 11), that "employees" were required to do "various miscellaneous work either before or after their scheduled shift" (like "cleaning the sidewalk in front of the garage…washing the vans, sweeping the floor, cleaning the bathrooms, and organizing the tools"), and that these "employees" were instructed to write down only their "official" work hours "in the logbook provided by Defendant." (Beaton Dec. ¶ 12.)

These allegations suffer from the same fatal defects as the others described above: Plaintiff does not provide any names of employees (or their Local or Area Managers), does not

state that he ever saw any other employee's records of their hours worked or payroll records, or even that any other employee ever told him that they were required to perform any work prior to or after their regular shift. Perhaps most tellingly, Plaintiff does not even state that he ever witnessed any other employee perform any work whatsoever prior to or after their shift at the Central Avenue Garage (where he claims that he worked prior to the start of his shift for five days per week for more than two years). Plaintiff also states that all employees were required to record their hours worked in a "logbook," (Beaton Dec., ¶ 12) even though Techs enter their time electronically. (*See* Sias Dec., ¶ 39.) In short, these vague, conclusory allegations, devoid of any personal knowledge, cannot provide the basis for conditional certification. *See, e.g., Feng,* 2016 WL 1070813, at *4; *Guo v. Tommy's Sushi, Inc.,* No. 14 Civ. 3964 (PAE), 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014) (denying conditional certification where plaintiff's allegations that they were personally aware of other employees who did not receive minimum wages or overtime compensation as required by law – without more – were "vague, conclusory, and unsupported allegations" that did not meet the burden for conditional certification").

### 4. Plaintiff's Attempt To Rely On Conversations With Others Does Nothing To Support His Motion

Plaintiff's attempt to salvage his Motion's failings by referencing four separate conversations of unknown dates and unknown lengths that he allegedly had with four other employees in the Central Avenue Garage over the course of more than two years of employment falls short of his burden even if this Court is willing to consider "hearsay" statements.

First, Plaintiff describes a conversation between himself and other Escorts "Sayad" and "Angie" in the "break room," during which Plaintiff generally complained that his check "was missing wages for hours and overtime hours that I worked." (Beaton Dec. ¶ 14.) Beaton alleges that Sayad mentioned that the same thing happened to him, and that Angie – who joined the

- 13 -

conversation – said that "she too did not get paid for all her hours worked."  (*Id.*)  Plaintiff, however, does not mention whether he shared a manager with Sayad or Angie, whether he saw either Sayad or Angie's timesheets or payroll records (or had any knowledge of their hours worked in any way), that he witnessed them working off-the-clock, *or even the reason that Sayad and Angie stated that they were allegedly undercompensated*.  (*Id.*)

Second*,* Plaintiff states that he "remembers discussing the issues of unpaid hours with [an Escort named] Bonnie."  (Beaton Dec., ¶ 15.)  But, like Plaintiff's allegations about his conversation with Sayad and Angie, Plaintiff's allegations about his conversation with Bonnie are more notable for what they are missing.  Plaintiff alleges *only* that he spoke with Bonnie regarding "the issues of unpaid hours."  (*Id.*)  He does not allege that Bonnie was not paid for all of her hours worked (or that she even told him that she was missing hours), what Bonnie's hours worked were, or whether Bonnie stated – or Plaintiff observed – that she was required to work prior to or after her regular shifts.  Even Plaintiff's statement that Bonnie "eventually complained to management" (*id.*) fails to state which manager Bonnie complained to or what she complained about.  In other words, Plaintiff does not state that Bonnie complained to anyone about being required to work unpaid hours, or *even that her complaint was about missing pay in any way whatsoever*.  (*Id.*)  Plaintiff also fails to provide any details about when, allegedly, Bonnie complained or why Bonnie did not take the issue to her union representative.  (*Id.*)

And Plaintiff's statement that Bonnie told him – at some later, unclear, time – that employees at her new garage in Coney Island "were also required to work off the clock" (*id.*) lacks any specificity whatsoever:  it does not mention any employee or manager names, any employee's titles or duties, the nature of such employees' alleged off-the-clock work, and relies upon *three different* levels of hearsay.  (*Id.*)

Third, and finally, Plaintiff alleges that he – on a date he does not mention – escorted a Tech by the name of Stan, who allegedly told Plaintiff that Stan and other technicians were not getting paid for all of their hours worked.  (Beaton Dec. ¶ 16.)  Plaintiff's allegations about his conversation with Stan, like his allegations about Sayad, Angie, and Bonnie, are missing key details necessary to support his bid for conditional certification.  Plaintiff does not provide – nor does he state that Stan provided – the names of any other Techs who were not compensated for all of their hours worked, whether such Techs were I&M Techs or another type of Tech, that such Techs were being required to work prior to or after their shift, in which garage these alleged Techs worked, or who their managers were.  (*Id.*)  Moreover, Plaintiff provides no specifics on Stan's hours worked, or states that he ever witnessed Stan working at the Central Avenue Garage prior to or after his shift.  (*Id.*)

Under the applicable case law, it is clear that Plaintiff's allegations about his conversations with Sayad, Angie, Bonnie, and Stan, due to their flaws enumerated above, cannot provide a "sufficient factual basis" on which to conditionally certify an FLSA collective action — as broadly as Plaintiff seeks or even more narrowly.  *See, e.g., Feng,* 2016 WL 1070813, at *4 (plaintiff's conversations with other workers, without additional factual allegations like their pay or schedules, failed to support conditional certification); *Lujan,* 2011 WL 317984, at *7 (plaintiff's conversations with two other employees identified only by first name were insufficient to support conditional certification);  *Weng,* 2018 WL 1737726, at *4 (noting that plaintiff's affidavit – which referenced that other workers would complain about their pay but failed, *inter alia,* to include their "duties performed, or hours worked" – raised "precisely the 'vague, conclusory, and unsupported assertions' that are an insufficient basis for conditional class certification."); *Guo,* 2014 WL 5314822, at *3 (plaintiff's allegations that they discussed

wages with their co-workers and that they were personally aware of other employees who did not receive minimum wages or overtime compensation, without further details, were "vague, conclusory, and unsupported assertions" that did not meet the conditional certification burden).

Further, as noted, none of Plaintiff's conversations with Sayad, Angie, Bonnie, or Stan indicated that they were subject to the same allegedly unlawful policy of requiring employees to perform unpaid work prior to or after their shift – *i.e.,* not one other employee told Plaintiff that they experienced circumstances similar to those Plaintiff alleges in his Complaint or Declaration. At most, Plaintiff alleges that these other employees also complained about their pay.  Mere complaints about pay, however, without a specific factual nexus to a plaintiff's allegations, are insufficient to support conditional certification.  *See, e.g, Li v. Chinatown Take-Out, Inc.,* 16 Civ. 7787 (JCM), 2018 WL 1027161, at *4 (S.D.N.Y. Feb. 21, 2018) (rejecting conditional certification, and noting that "the existence of complaints from 'other employees' regarding pay does not suggest that Plaintiffs and all of Defendants' non-managerial employees 'together were victims of a common policy or plan that violated the law") (*quoting Myers,* 624 F.3d at 555).

### 5. Plaintiff Has Failed to Demonstrate That He Is Similarly Situated to *Any* Tech

Plaintiff proffers *zero* information about Techs (such as their diverse duties, hours worked, pay scales, or even more than one Tech's name) in his Declaration or Complaint.  (*See generally* Compl. and Beaton Dec.)  Defendant, on the other hand, has shown that Techs' duties are markedly different from Escorts and, concomitantly, that Techs are paid subject to a significantly higher pay scale than Escorts by virtue of their skilled labor.  (*See* Williams-Sias Dec., Ex. C, ¶¶ 20, 21.)  Additionally, Defendant has established that, pursuant to the CBA, Escorts work in limited geographic areas and thus with limited numbers and a specific type of Tech.  (*Id*. Ex. C, at W213 (reflecting that Escorts worked only in "Zone 1," which consists of

the New York City Boroughs of the Bronx, Brooklyn, Manhattan, and Queens); ¶ 17.)  As a result, Plaintiff has failed to provide sufficient evidence justifying the inclusion of *any* Techs in his proposed class.  *See, e.g., Wing v. Empire State Auto Corp.,* No. 14-cv-1491 (WFK) (VMS), 2015 WL 4603117, at *9-10 (E.D.N.Y. July 29, 2015) (declining to extend conditional certification to job classifications beyond that of plaintiff where other positions received "significantly higher weekly wage" and involved different duties); *Montellano-Espana v. Cooking Light, Inc.,* 14-CV-1433 (SJ), 2014 WL 12834855, at *5 (E.D.N.Y. Oct. 3, 2014) (denying to extend conditional certification to job classification subject to different pay schedule where plaintiff failed to allege that they filled that position, were familiar with the position's responsibilities, or that they had knowledge of how the defendant compensated that position); *Zhan v. Ichiban Group, LLC,* No. 1:17-cv-148 (MAD/TWD), 2020 WL 1030651, at *7 (N.D.N.Y. Mar. 3, 2020) (limiting conditional certification to certain classifications where there was a "near-total absence of evidence concerning" any other classification); *Colon v. Major Perry St. Corp.,* No. 12-cv-3788 (JPO), 2013 WL 3328223, at *7-8 (S.D.N.Y. July 2, 2013) (excluding job classification from conditional certification because the position involved "markedly different" pay scales, hours, and noting that its decision to exclude the classification was "bolstered by the near-total absence of evidence concerning" the excluded position).

> **6.     Plaintiff, Moreover, Has Failed to Demonstrate that He Is Similarly Situated to Any Other Escort or Tech *Even Within The Central Avenue Garage***

Not only has Plaintiff failed to offer sufficient evidence of a common, unlawful state-wide policy, or to show that his is similarly situated to Techs or Escorts within his broad proposed class, he likewise cannot show that he is similarly situated to any Escort or I&M Tech in the Central Avenue Garage where he worked.  As stated *supra*, Plaintiff has provided no detail about anyone's circumstances other than his own.  Although he uses the term "personal

observation" in his Motion, his Declaration does not contain anything of the sort.  He says

nothing about observing any other employee working prior to the start of their regularly

scheduled shift – or after their shift – nor does he even name any of the alleged manager(s) at

issue.  As such, there is no evidence that the alleged practice extended beyond his alleged

personal experience under a particular, yet unidentified manager.

### C.  Plaintiff's Cited Case Authority Is Inapposite

Beyond Plaintiff's failure to make a factual showing sufficient to obtain conditional

certification, Plaintiff's Motion relies upon numerous cases that do not support his arguments.

Several of the cases that Plaintiff relies upon contain no meaningful analysis of the requirements

for satisfying the plaintiff's burden at the conditional certification stage and/or are easily

distinguishable on other important factual grounds.  *See Khamrisiri v. George & Frank's*

*Japanese Noodle Restaurant, Inc.,* No. 12 Civ. 265 (PAE), 2012 WL 1981507, at *1 (S.D.N.Y.

June 1, 2012) (in FLSA action regarding employer's failure to pay tipped employees minimum

wage and overtime whatsoever, tipped employee submitted declaration "confirming that she and

other non-exempt employees employed by defendant in tipped positions" were paid less the

statutory minimum wage and not paid overtime); *Pefanis v. Westway Diner, Inc.,* No. 08 Civ.

002 (DLC), 2008 WL 4546526, at *1 (S.D.N.Y. Oct. 8, 2008) (granting conditional certification

where the defendant's sole argument was that conditional certification was inappropriate because

none of the plaintiff's co-workers had thus far consented to join the lawsuit).  Plaintiff's

declaration has not "confirm[ed]" that he or other Escorts or Techs were not paid for overtime,

*Khamrisiri,* 2012 WL 1981507, at *1, and has not even alleged that any other Escort or Tech was

required to perform uncompensated work prior to or after their shift.  Moreover, unlike the

defendant in *Pefanis*, the Company does not rely solely Plaintiff's lack of opt-ins, 2008 WL

4546526, at *1, but instead emphasizes the myriad deficiencies in Plaintiff's factual allegations.

Other cases that Plaintiff relies upon are purely inapposite due to the level of detail that the plaintiff provided in their declaration and/or the number of declarations that the plaintiff submitted.  *Compare Iriarte v. Redwood Deli and Catering Inc.,* No. CV-07-5062 (FB) (SMG), 2008 WL 2622929, at *2 (E.D.N.Y. June 30, 2008) (where the plaintiff submitted detailed declaration, post pre-conditional certification discovery, pointing to defendant's failure to keep payroll records or records of plaintiff's hours worked and inability to state total amount plaintiff was paid for overtime worked, as well as describing personal observations of other employees working more than 40 hours per week) *with* (Williams-Sias Dec., Exs. K, ¶ 38 (providing defendant's payroll records, also already provided to Plaintiff)) and (Beaton Dec. *generally* (sharing no circumstances under which he personally observed employees working more than 40 hours per week without compensation); *see also Harhash v. Infinity West Shoes, Inc.,* No. 10 Civ. 8285 (DAB), 2011 WL 4001072, at *1, 4 (S.D.N.Y. Aug. 25, 2011) (granting conditional certification on the basis of three declarations from plaintiffs who set forth "specific facts" demonstrating that they were similarly situated with the proposed collective).

Finally, the cases which Plaintiff cites approvingly to justify his reliance on *three levels* of hearsay are also distinguishable.  *See Guzelgurgenli v. Prime Time Specials, Inc.,* 883 F.Supp.2d 340, 347-48 (E.D.N.Y. 2012) (three named plaintiffs each submitted a declaration identifying, with specificity, that they were paid straight-time compensation for hours more than 40 per week, and all three plaintiffs identified another employee who had previously filed a complaint with the Department of Labor as well as the specific manager who denied them overtime compensation, limiting certification to the stores were there were sufficient allegations, and relying uniformly on one-level of hearsay from a specific manager who explained the defendant's unlawful policy directly to them); *Hamadou v. Hess Corp.,* 915 F.Supp.2d 651, 663

(S.D.N.Y. 2013) (granting limited conditional certification because *three different* plaintiffs submitted *three different* declarations pointing to the unlawful time edits made by a *single, named* manager at one location, and declining to extend conditional certification beyond Queens and the Bronx because plaintiffs failed to offer evidence about timekeeping practices beyond those two boroughs); *Sanchez v. Gansevoort Management Group, Inc.,* No. 12 Civ. 75 (KBF), 2013 WL 208909, at *1-2 (S.D.N.Y. Jan. 10, 2013) (noting that plaintiff's solitary affidavit "does not suffice to conditionally certify the entirety of plaintiff's proposed class" because it did not speak to a common policy or practice of paying below minimum wage and, where it did suffice for conditional certification, was able to point to specific "knowledge" that other employees who worked over 40 hours per week were not paid overtime); *Winfield v. Citibank, N.A.,* 843 F.Supp.2d 397, 403, 403 n.4 (S.D.N.Y. 2012) (according minimal weight to hearsay and, instead, relying on evidence from 10 pre-conditional certification depositions – including one defendant witness – that stated that employees were not compensated for overtime hours). Indeed, Plaintiff's reliance on multiple levels of hearsay has been rejected by other courts considering conditional certification. *See, e.g., Barfield v. New York City Health and Hosps. Corp.,* No. 05 Civ. 6319 (JSR), 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005) (denying conditional certification where "plaintiff present[ed] nothing but limited anecdotal hearsay" to suggest a widespread unlawful practice).

Plaintiff's citations to legal authority Plaintiff are as flawed as his Complaint and Declaration, and he offers no basis upon which to grant conditional certification as to any class.

## II.   PLAINTIFF'S NOTICE AND DISTRIBUTION PLAN MUST BE REJECTED

As Defendant's foregoing arguments make clear, this Court should deny Plaintiff's motion in its entirety. Even if this Court were to decide to grant conditional certification – which

it should not – Plaintiff's proposed Notice (Mot. Ex. A.) is defective as to its scope, content, and proposed manner of delivery.

First, there are a number of flaws within Plaintiff's proposed notice itself that make it incompatible with the requirement that Court-supervised notice be "accurate" such that employees "can make informed decisions about whether to participate." *Dilonez v. Fox Linen Service, Inc.,* 35 F.Supp.3d 247, 254 (E.D.N.Y. 2014) (quoting *Hernandez v. Immortal Rise, Inc.,* 11-CV-4360, 2012 WL 4369746, at *6 (E.D.N.Y. Sept. 24, 2012). Plaintiff's proposed notice is inaccurate and misleading in several respects. For example, it states that its recipients "do not have to pay any attorneys' fees or expenses for this lawsuit," thereby misleading opt-ins into believing that any damages they receive are not subject to Plaintiff's counsel's contingency fee. (*See* Mot., Ex. A, at 3.) Further, the proposed notice states that any "technician or technician escort…[who] worked for Defendant at any time between February 2, 2014 and the present…may join this lawsuit" but also states that any such individual will be "bound by the outcome of this lawsuit's FLSA claim," misleading individuals with claims that are time-barred by the FLSA – but still live under the NYLL – regarding their rights. For these reasons, Defendant asks that, should the Court conditionally certify a class, it provide a 30-day period during which the Company and Plaintiff could negotiate the Notice language.

Second*, and relatedly, Plaintiff's proposed time period is improper. Plaintiff has requested that notice issue to persons who worked as non-exempt Escorts or any type of non-exempt Techs in the state of New York at any time between February 2, 2014 (six years before the Complaint was filed) and the present. (*See* Mot. Ex. A.) It cannot be overlooked, however, that the employees who worked for Defendant more than three years before the notice issues are time-barred and thus cannot opt-in to the FLSA lawsuit. In fact, this Court has already decided

- 21 -

that opt-in notices should only span a three-year period regardless of whether there are both FLSA and New York Labor Law claims because there is "no reason to provide an opt-in notice to a plaintiff whose claims could not be asserted in this Court." *Hanchard-James v. Brookdale Family Care Centers,* No. 12 Civ. 1922 (BMC), 2012 WL 3288810, at *4 (E.D.N.Y. Aug. 9, 2012); *see also Sobczak v. AWL Industries, Inc.,* 540 F.Supp.2d 354, 364 (E.D.N.Y. 2007) (rejecting request for notice to span six-year period).  Indeed, providing notice to individuals who cannot opt-in to the FLSA action is contrary to the purpose of providing notice and would serve only to cause confusion.  *See Lujan,* 2011 WL 31784, at *9 ("The purpose of the instant motion is to notify and inform those eligible to opt in to the collective action, and time-barred former employees may not do so"); *Hamadou,* 2013 WL 164009, at *15 (denying a six-year notice period because "[i]t would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims").

Third, Plaintiff's suggestion (Mot. at 1-2) that his proposed notice should be posted "at any time during regular business hours in Defendants' principal place of business where Covered employees are employed" is unnecessary, and the Court should reject it summarily.  This Court, like courts throughout the country, has acknowledged that first class mail is sufficient and Plaintiff has presented no reason why a notice posting is called for here.  *See Morangelli v. Chemed Corp.,* 10 Civ. 0876 (BMC), 2010 WL 11622886, at *4 (E.D.N.Y. June 17, 2010) (collecting cases and noting that "posting of notices" at the defendant's workplace was "not necessary" because first class mail was sufficient); *see also Han v. Sterling Nat. Mortg. Co., Inc.,* No. 09-CV-5589 (JFB) (AKT), 2011 WL 4344235, at *12 n.13 (E.D.N.Y. Sept. 14, 2011) (declining to order posting of class notice where there was no indication that first class mail would prove ineffective); *Delgado v. Ortho-McNeil, Inc*., No. 07-CV-263 (CJC), 2007 WL

2847238, at *3 (C.D. Cal. Aug. 7, 2007) (forms of notice other than first class mail are "inappropriate"); *Engers v. AT&T*, Civ. No. 983660 (SRC), 2007 WL 1557163, at *4 (D.N.J. May 24, 2007) ("Because Defendants will provide names and addresses of virtually all potential group members, broad solicitations are neither needed nor appropriate."); *Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 481 (E.D. Cal. 2006) ("[f]irst class mail is ordinarily sufficient to notify class members who have been identified").

Fourth, for the same reasons, the Court should not grant Plaintiff's request that the Company furnish telephone numbers of putative class. (Mot. at 11-12.) First class mail is the preferred method for issuing notice and Plaintiff cannot demonstrate a need for telephone numbers in this case. *See Han,* 2011 WL 4344235, at *12 (declining to provide phone numbers where "there is no evidence at this time that plaintiff will have trouble reaching the Proposed Class by sending the class notice to their address via first class mail"); *see also Colozi v. St. Joseph's Hosp. Health Ctr.,* 595 F.Supp.2d 200, 201 (N.D.N.Y. 2009) (denying request for telephone numbers where "plaintiffs have no need for the additional inherently private information sought, including e-mail addresses, telephone numbers, and dates of birth").

Fifth, Plaintiff requests "expedited notice" (*i.e.,* that the Court order the Defendant to produce of list of employees subject to the notice within 10 days of an order conditionally certifying the class). (*See* Mot. at 10-12.) But given Plaintiff's dilatory approach to service in this case,[4] it is unclear why Plaintiff now insists upon this "expedited notice." In any event, this Court has previously held that disclosure of the list of employees within 14 days is sufficient to

---

[4] Plaintiff, in this case, did not serve the Complaint until over four months after it was filed, (*compare* Dkt. 1 *with* Dkt. 12) and premised this delay only upon the unavailability of his preferred process server. (*See* Dkt. 10.)

notify potential opt-ins of their rights.  *See Rotari v. Mitoushi Sushi, Inc.,* 19-cv-5182 (BMC),

2020 WL 1289589, at *7 (E.D.N.Y. Mar. 18, 2020).

## III.    PLAINTIFF'S REQUEST FOR TOLLING IS NOT WARRANTED

Plaintiff also inappropriately requests tolling of the statute of limitations until the date

upon which Plaintiff is "able to send notice to potential opt-in Plaintiffs."  (Mot. at. 13.)  In an

FLSA action, however, "the statute of limitations applicable to a plaintiff's claims continues to

run until he or she has filed a written consent with the court to join the lawsuit."  *See Rotari,*

2020 WL 1289589, at *5 (quoting *Garriga v. Blonde Builders, Inc.,* No. 17-cv-0497, 2018 WL

4861394, at *10 (E.D.N.Y. Sept. 28, 2018).  Equitable tolling is warranted "only in rare and

exceptional circumstances."  *Id.* at *6 (disagreeing "with those decisions that effectively

eliminate the requirement of extraordinary or unique circumstances as a condition of equitable

tolling in FLSA cases"); *see also Knox v. John Varvatos Enterprises, Inc.,* 282 F.Supp.3d 644,

661 (S.D.N.Y. 2017) (denying equitable tolling where plaintiff "provide[d] no facts or even

arguments regarding existing or potential opt-in plaintiffs that reflect that these employees of

[defendant] have been 'pursuing [their] rights diligently'").

Here, Plaintiff has provided no "extraordinary or unique circumstances" that would

justify equitable tolling, and instead points only to "the unique procedural posture" of FLSA

cases generally – which does not support the request – and fails to state how putative plaintiffs

would be prejudiced if the normal statute of limitations were applied.  (Mot. at 13.)  Plaintiff's

failure to serve the summons and complaint for four months renders his request for equitable

tolling even more preposterous: if Plaintiff were truly concerned with preserving the rights of

potential opt-ins, he would have served the Summons and Complaint promptly after filing.

## **<u>CONCLUSION</u>**

For the foregoing reasons, this Court should deny Plaintiff's Motion in its entirety.  Even if the Court grants Plaintiff's Motion, it should recognize the numerous flaws with Plaintiff's proposed notice and order the Parties to negotiate the form and content of the Notice.


Dated:  September 15, 2020                                   Respectfully submitted,


                                                            */s/ Tonya B. Braun*
                                                            JONES DAY

                                                            Tonya B. Braun (admitted *pro hac vice*)
                                                            325 John H. McConnell Boulevard, Suite 600
                                                            Columbus, Ohio 43215
                                                            Tel. (614) 281-3834
                                                            Fax (614) 461-4198
                                                            tbraun@jonesday.com

                                                            Wendy C. Butler
                                                            250 Vesey Street
                                                            New York, New York 10281
                                                            Tel. (212) 326-3939
                                                            Fax (212) 755-7306
                                                            wbutler@jonesday.com

                                                            *Attorneys for Defendant*
                                                            *Verizon New York, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 15, 2020, the foregoing Defendant Verizon New York, Inc.'s Opposition to Plaintiff's Motion for Conditional Certification, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs and its Declaration in Support of its Opposition was served to all counsel of record via the Court's ECF system and e-mail.

Dated: September 15, 2020
New York, New York

*/s/ Tonya B. Braun*
Tonya B. Braun