```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
RAWLE BEATON, on behalf of himself and                      :
others similarly situated,                                  :
                                                            :
                                                            :   **MEMORANDUM**
                            Plaintiff,                      :   **DECISION AND ORDER**
                                                            :
             -against-                                      :   20-CV-672 (BMC)
                                                            :
                                                            :
VERIZON NEW YORK, INC.,                                     :
                                                            :
                            Defendant.                      :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff Rawle Beaton brings this action against his former employer, defendant Verizon New York, Inc., alleging violations of various state and federal labor and anti-discrimination laws. Before me is his motion seeking conditional approval of a collective action and court-facilitated notice under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). For the reasons that follow, the motion is granted in part.

## BACKGROUND

Plaintiff worked for defendant as a technician escort, providing security to technicians during their visits to customers' homes and businesses. His "official" shift lasted from 7:30 AM to 4:30 PM, but he maintains that defendant required him to complete various tasks before and after his shift, such as cleaning the sidewalk, washing vans, sweeping the floor, cleaning the bathroom, and organizing tools. Plaintiff also alleges that defendant instructed him to log only his "official" work hours, ensuring that plaintiff never received any compensation for the additional hours he worked. "It is difficult to provide a daily account of hours I worked for

which I was not paid," plaintiff acknowledges, but it likely averaged "around five" hours per week.

Plaintiff worked out of a garage at 70 Central Avenue in Brooklyn ("the Central Avenue garage"). He also recites a long list of other garages throughout the State of New York where defendant allegedly employs other technicians and technician escorts. Defendant owns and operates these garages as a "single enterprise," plaintiff continues, and the employees at those garages enjoy identical terms of employment pursuant to a collective bargaining agreement. Accordingly, plaintiff moves for conditional aproval of his FLSA claim as a collective action "on behalf of all technicians and technician escorts employed by [d]efendants in New York City for the six-year period prior to the filing of the [c]omplaint."[1]

To support this motion, plaintiff relies upon the complaint and his own declaration. The complaint details plaintiff's own experiences; the declaration describes his interactions with four fellow employees. All four of those employees worked out of the Central Avenue garage. Plaintiff does not recall any of their last names.

Three of those employees were fellow escorts. Plaintiff first describes a conversation in the break room, when he told two escorts, Sayed and Angie, that his check "was missing wages for hours and overtime hours that [he] worked." Sayed responded that "the same thing happened to him." Angie noted that she, too, "did not get paid for all her hours worked." And both Sayed and Angie claimed that they "knew other technicians and technician escorts that were based out of other garages and that they had similar complaints." Plaintiff next recounts "discussing the issues of unpaid hours" with an escort named Bonnie. When Bonnie "complained to

---

[1] Plaintiff's filings repeatedly mention "defendants" even though plaintiff has named only one defendant, Verizon New York, Inc., in the complaint. The Court will refer to Verizon New York, Inc., as "defendant."

management," defendant "relocated" her to a garage in Coney Island. Bonnie then told plaintiff that "employees at that garage were also required to work off the clock."

The declaration also describes a conversation with a technician named Stan. When plaintiff complained that he "was not getting paid for all [his] hours worked," Stan reported that "the same thing happens to him and other technicians." Stan added that "he knew technicians and technician escorts from other garages that everyone suffered from working off the clock."

Finally, the declaration describes plaintiff's personal knowledge of defendant's practices. "Based on my work experience and my personal observations and conversations with co-workers," he declares, "I believe that all employees employed by [defendant] were subject to the same wage and hour policies. I regularly spoke with my co-workers, and it was common knowledge that we were not properly compensated for all our hours worked." He adds that "there are other employees who work [for defendant] who were not paid their proper wages by [d]efendant because of these issues." Although he cannot recall their names, he "believe[s] that all of the technicians and escorts working in New York suffered from this illegal policy."

## DISCUSSION

I.  **Conditional Approval of a Collective Action**

The FLSA authorizes employees to bring a collective action to recover unpaid minimum wage and overtime compensation on behalf of themselves and similarly situated employees. See 29 U.S.C. § 216(b). Because similarly situated employees can become plaintiffs only by filing written consent with the court, see id., courts have discretion to facilitate notice to those employees, see Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989). This process is known as , see, e.g., Weng v. Kung Fu Little Steamed Buns Ramen, Inc., No. 17-CV-273, 2018

3

WL 1737726, at *2 (S.D.N.Y. March 26, 2018), but to avoid confusing it with class actions, I generally refer to it as approval of a collective action,

When determining whether to approve a collective action, courts in the Second Circuit conduct a two-step process.  See Myers v. Hertz Corp., 624 F.3d 537, 554–55 (2d Cir. 2010). First, in a step known as conditional approval, the court "mak[es] an initial determination to send notice to potential opt-in plaintiffs who may be similarly situated to the named plaintiffs with respect to whether a FLSA violation has occurred." Id. at 555 (quotation omitted).  Second, "the district court will, on a fuller record, determine whether a so-called collective action may go forward by determining whether the plaintiffs who have opted in are in fact similarly situated to the named plaintiffs." Id. (quotation omitted).

This case is at the first step.  Here, plaintiffs must "make a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." Id. (quotation omitted).  "[T]he focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated." Romero v. La Revise Assocs., LLC., 968 F. Supp. 2d 639, 645 (S.D.N.Y. 2013) (quotation omitted). Specifically, plaintiffs "must show a factual nexus . . . between the plaintiff[s'] situation and the situation of other potential plaintiffs," which plaintiffs often accomplish through "pleadings, affidavits, and declarations." Fernandez v. On Time Ready Mix, Inc., No. 14-CV-4306, 2014 WL 5252170, at *1 (E.D.N.Y. Oct. 4, 2014) (quotation omitted).

In this case, plaintiff has failed to establish this factual nexus when it comes to the broad class of employees that he seeks to represent, namely, "all technicians and technician escorts employed by [defendant] in New York City." Plaintiff's statements that he "believe[s] that all

4

employees . . . were subject to the same wage and hour policies" and "know[s] that technicians and technician escorts [who] worked at various locations were not paid for all of the hours worked" are nothing more than the kinds of "vague, conclusory, and unsupported assertions that are an insufficient basis for conditional class ." Weng, 2018 WL 1737726, at *4 (quotation omitted). The same goes for Bonnie's comment that employees at the Coney Island garage "were also required to work off the clock." Courts in this district have denied approval of a collective action when faced with similarly vague statements. In Lujan v. Cabana Management, Inc., No. 10-CV-755, 2011 WL 317984, at *7 (E.D.N.Y. Feb. 1, 2011), for example, a New York plaintiff sought to include employees at the defendant's Florida locations in the collective, based on his statements that the Florida employees "told [him] that they and their co-workers were also not being paid their legal wages and that the same things that were occurring at [defendant's] New York locations were also occurring at [defendant's] Florida locations." The court rejected this "scant evidence" as "insufficient." See id.; accord Shibetti v. Z Rest., Diner & Lounge, Inc., No. 18-CV-856, 2020 WL 4572064, at *8 (E.D.N.Y. Aug. 7, 2020). This case is no different.

Moreover, I cannot infer that defendant employed a policy throughout New York City simply because it employed that policy at one or two garages. To be sure, courts "regularly find named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs have demonstrated that they were all subject to the same allegedly unlawful policy or plan." Rotari v. Mitoushi Sushi, Inc., 448 F. Supp. 3d 246, 252 (E.D.N.Y. 2020) (quotation omitted). And "evidence of centralization" can allow a "viable inference" that an employer paid its employees at one location in the same manner that it paid employees at others. Siewmungal v. Nelson Mgmt. Grp. Ltd., No. 11-CV-5018, 2012 WL 715973, at *3 (E.D.N.Y. March 3, 2012); see Rotari, 448 F. Supp. 3d at 252. But these statements arise from

5

cases involving small businesses with only a few locations and a relatively narrow class of potential plaintiffs. For larger employers, the inference becomes more strained absent broader evidentiary support. In Anjum v. J.C. Penney Co., No. 13-CV-460, 2015 WL 3603973, at *8–9 (E.D.N.Y. June 5, 2015), for example, the court declined to approve a collective including all J.C. Penny sales associates in the State of New York, citing the failure to produce any evidence of violations beyond two stores in Manhattan and Staten Island. By contrast, the court in Lin v. Everyday Beauty Amore, Inc., No. 18-CV-729, 2018 WL 6492741, at *3 (E.D.N.Y. Dec. 10, 2018), approved a collective including employees from all of defendants' New York City locations, because the plaintiffs averred that they had spoken to employees at half those locations. This case is closer to Anjum. Given the wide class of putative plaintiffs and the narrow sample of evidentiary support, I cannot approve a collective consisting of all technicians and technician escorts employed by defendant in New York City.

Narrowing the case to the Central Avenue garage, I conclude that plaintiff has also failed to show a factual nexus between himself and the technicians. The declaration mentions only one technician, Stan, who stated that he "was not getting paid for all [his] hours worked." But it is not clear how or why that occurred. There is no evidence to show that defendant required Stan – or any other technician – to complete miscellaneous tasks before and after a shift without compensation, as defendant allegedly did to plaintiff. Compare Chen v. Asian Terrace Rest., Inc., No. 19-CV-7313, 2020 WL 4041133, at *3 (E.D.N.Y. July 17, 2020) (approving collective of "all non-managerial employees" where plaintiff averred that various types of employees were paid a flat weekly rate despite working more than 40 hours per week). As a result, plaintiff has not made the "*job-specific* factual showing" that the law requires, and I cannot infer that defendant applied one policy to technicians simply because defendant applied it to escorts.

See Yap v. Mooncake Foods, Inc., 146 F. Supp. 3d 552, 565 (S.D.N.Y. 2015); Guo v. Tommy's Sushi, Inc., No. 14-CV-3946, 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014).  Therefore, I will not authorize a collective consisting of all technicians and technician escorts at the Central Avenue garage.

Nevertheless, plaintiff has presented enough evidence of a factual nexus between himself and the other escorts at that garage.  "[W]here a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations."  Reyes v. Nidaja, LLC, No. 14-CV-9812, 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015).  Here, the declaration identifies three other escorts who all complained, in some form or another, that defendant failed to pay them for the full hours they worked.  The declaration then specifies their names (or at least part of their names), their positions, and the garage at which they worked.  That alone separates the evidence from the kinds of unsubstantiated, vague, and barebones assertions that courts have rejected.  Compare id. at *2 (plaintiff claimed to have "observed" that other, unnamed employees were not paid overtime); Ali v. New York City Health & Hosps. Corp., No. 11-CV-6393, 2013 WL 1245543, at *3 (S.D.N.Y. March 27, 2013) (plaintiff cited "conversations with other respiratory therapists" without providing additional information).

Still, the key issue is whether the complaint and declaration show a *common* policy or plan.  The details are somewhat inconsistent.  Plaintiff alleges that defendant required him to complete various unpaid tasks before and after his shift, yet he declares that his fellow escorts complained of "missing wages for hours and overtime hours that [they] worked," "not get[ting] paid for all [their] hours worked," and being "required to work off the clock."  These statements could encompass a variety of violations – a fact that, in many instances, could prove fatal to the

7

claim. See, e.g., Ali, 2013 WL 1245543, at *3. Nevertheless, a plaintiff "need not plead the exact same fact scenario . . . in order to establish a common policy or plan"; an allegation that "employees were required to work off-the-clock, beyond their regularly scheduled shift, provides a sufficient factual nexus . . . to support conditional ." Garcia v. Chipotle Mexican Grill, Inc., No. 16-CV-601, 2016 WL 6561302, at *8 (S.D.N.Y. Nov. 4, 2016). In Chime v. Peak Security Plus, Inc., 137 F. Supp. 3d 183, 201 (E.D.N.Y. 2015), for example, the court identified a common policy of "requir[ing] security guards to work beyond their scheduled shifts" without compensation, even though the two underlying declarations were "models for neither consistency nor clarity." This case suffers from the same flaws, but it falls within the purview of these cases.

In a lengthy opposition memorandum, defendant argues that several cases compel a different conclusion. None are persuasive. In several, the court *granted* conditional approval of a narrow collective consisting of the employees at the location where the plaintiff worked, even though the evidence left much to be desired. See Feng v. Soy Sauce, LLC, No. 15-CV-3058, 2016 WL 1070813, at *5 (E.D.N.Y. March 14, 2016); Lujan, 2011 WL 317984, at *4–7 (E.D.N.Y. Feb. 1, 2011). In others, the plaintiffs produced little to no detail regarding their conversations with coworkers, omitting several facts that are present here – such as names, positions, and the nature of the complaints. See Weng, 2018 WL 1737726, at *5; Zheng v. Good Fortune Supermarket Grp. (USA), Inc., No. 13-CV-60, 2013 WL 5132023, at *5 (E.D.N.Y. Sept. 12, 2013).[2]

---

[2] Defendant also relies on Diaz v. Electronics Boutique of America, Inc., No. 04-CV-0840, 2005 WL 2654270, at *5 (W.D.N.Y. Oct. 17, 2005), which reasoned that "off-the-clock" claims are "too individualized to warrant collective action treatment." But "Diaz is against the weight of authority." Benitez v. Demco of Riverdale, LLC, No. 14-CV-7074, 2015 WL 3780019, at *5 (S.D.N.Y. June 15, 2015) (quoting Francis v. A & E Stores, Inc., No. 06-CV-1638, 2008 WL 4619858, at *3 n.3 (S.D.N.Y. Oct. 16, 2008)).

Defendant's remaining arguments are ones that courts frequently reject.  First, defendant takes issue with the probative value of the evidence, even though it is well established that a court may grant conditional approval "based solely on the personal observations of one plaintiff's affidavit" or declaration.  Hernandez v. Bare Burger Dio, Inc., No. 12-CV-7794, 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases).  "[T]he fact that these allegations may be based on hearsay does not diminish their value."  Anjum, 2015 WL 3603973, at *6 (quotation omitted).  Defendant therefore "overestimate[s] the required showing at this initial stage" and its "lenient evidentiary standard."  Chen, 2020 WL 4041133, at *3 (quotations omitted).

Finally, defendant offers up its own evidence, seeking to show that plaintiff received overtime pay and knew that "timekeeping policies prohibit off-the-clock work and require employees to record all time worked."  Maybe so.  But "competing declarations do not undermine [a plaintiff's] showing in the first stage of the conditional process" because "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  Anjum, 2015 WL 3603973, at *7 (quotations omitted).

I therefore conditionally authorize this case to proceed as a collective action to include all technician escorts who worked out of the garage at 70 Central Avenue during the relevant time period.

## II.     Equitable Tolling

Plaintiff has asked to toll the statute of limitations "until such time that [he] is able to send notice to potential opt-in plaintiffs."  For "any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages" under the FLSA, the statute of limitations is three years if the conduct was willful and two years if it was not.  29 U.S.C. § 255(a).  It continues to run until an opt-in plaintiff has filed written consent with the court.  Garriga v. Blonder Builders, Inc., No. 17-CV-0497, 2018 WL 4861394, at *10 (E.D.N.Y. Sept. 28, 2018).  Unlike a class action, the filing of the complaint does not toll the statute of limitations, and opt-in plaintiffs' written consent does not relate back to the filing of the complaint.  Rotari, 448 F. Supp. 3d at 254.

The Second Circuit has made clear that, "[w]hen determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80–81 (2d Cir. 2003) (quotation omitted).  Some courts have concluded that the fact that "equitable tolling issues often arise in other FLSA actions is sufficient to send notice to the larger group."  Knox v. John Varvatos Enterprises, Inc., 282 F. Supp. 3d 644, 661 (S.D.N.Y. 2017) (quotation omitted) (collecting and rejecting these cases).  But I have already "disagree[d] with those decisions that effectively eliminate the requirement of extraordinary or unique circumstances as a condition of equitable tolling in FLSA cases."  Rotari, 448 F. Supp. 3d at 254.  Plaintiff has not articulated "why [his] case is any different from a regular, run-of-the-mill FLSA collective action."  See id. I therefore deny the motion to the extent it requests equitable tolling.

10

### III.   Disclosure of Contact Information

Plaintiffs seek to require defendant to provide the "names, titles, compensation rates, date of employment, last known mailing addresses, email addresses, and all known telephone numbers" for "all [c]overed [e]mployees . . . who were employed by [defendant] at any point" in the previous six years.  This request is "overly broad," but I grant the motion to the extent necessary to facilitate providing notice by first-class mail and email to viable members of the collective.  See id.  Defendant shall disclose the names, addresses, and email addresses for all employees who worked as a technician escort at the Central Avenue garage.  The information need cover only technician escorts employed within three years of this order.  See id. (limiting the period to three years); see also Lopes v. Heso, Inc., No. 16-CV-6796, 2017 WL 4863084, at *2 (E.D.N.Y. Oct. 27, 2017) (discussing in greater depth the "split within the Second Circuit" regarding whether "conditional  and the mailing of a court-approved notice should encompass a three-year or six-year period").  Defendant must furnish this information in a computer-readable format within fourteen days of this order.[3]

### IV.   Posting of the Notice

Plaintiff also requests "[p]osting of the notice, along with the consent forms, at any time during regular business hours in [defendant's] principal place of business."  Courts in this Circuit "routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail," because it "maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in."  Wang v. H.B. Rest. Grp., Inc., No. 14-CV-813, 2014 WL 5055813, at *6

---

[3] With no further explanation, plaintiff has requested "expedited" notice.  There is no reason to think that fourteen days is insufficient.  See Rotari, 448 F. Supp. 3d at 255.

11

(S.D.N.Y. Oct. 7, 2014) (quotations omitted). I order defendant to post notice and consent forms in a conspicuous location at the Central Avenue garage within seven days of this order. See Rotari, 448 F. Supp. 3d at 256.

## V. Content of the Notice

Defendant contends that the proposed notice is "inaccurate and misleading in several respects." Most notably, defendant takes issue with the statement regarding contingency fees:

> The firm is handling the lawsuit on a "contingency fee" basis, which means that you do not have to pay any attorneys' fees or expenses for this lawsuit. If the [p]laintiff wins a favorable judgment, [plaintiff's counsel] may ask the Court to award it its reasonable lodestar or up to one-third of the monetary recovery, whichever is greater.

In defendant's view, this statement "mislead[s] opt-ins into believing that any damages they receive are not subject to [p]laintiff's counsel's contingency fee."

"The Court has broad discretion over the details of the [n]otice." Guo, 2014 WL 5314822, at *4 (quotation omitted). Given this discretion, I am somewhat skeptical that the notice must discuss the contingency fee at all. The notice serves to alert potential plaintiffs that they may join the collective action; to the extent they have additional questions about costs, they are perfectly capable of asking counsel or researching the question themselves. Nevertheless, I need not decide whether to omit a discussion of the contingency fee, because defendant has not made that specific request. I therefore modify the disputed language to read, "The firm is handling the lawsuit on a 'contingency fee' basis, which means that you do not have to pay any attorneys' fees or expenses if the plaintiff does not obtain a favorable judgment or a settlement. If the plaintiff does obtain a favorable judgment or a settlement, attorneys' fees or a portion of the recovery will be deducted."

Defendant also objects to the statement that, "[i]f you worked for [d]efendant at any time between February 2, 2014 and the present, you may join this lawsuit." Given the three-year limitations period, the date shall be changed to the date three years before this order. Rotari, 448 F. Supp. 3d at 254; Lopes, 2017 WL 4863084, at *2. To the extent defendant seeks additional revisions, the changes would "amount to nothing more than a nitpicky rearranging of words that does nothing to clarify or change the meaning of the disputed sentences." Hanchard-James v. Brookdale Family Care Centers, No. 12-CV-1922, 2012 WL 3288810, at *7 (E.D.N.Y. Aug. 9, 2012). I adopt the remainder of the proposed notice.

## CONCLUSION

Plaintiff's [21] motion for conditional approval as a FLSA collective action, and for court-authorized notice, is granted in part, in accordance with the guidelines set forth above. Within 7 days of this order, defendant shall post the notice, along with sufficient consent forms, in a conspicuous location at the Central Avenue garage. Within 14 days of this order, defendant shall disclose to plaintiff the contact information of the technician escorts at the Central Avenue garage, as set forth above. Plaintiffs who wish to participate in this FLSA collective action must opt in by November 6, 2020.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       September 30, 2020