# EXHIBIT E

# JONES DAY

325 JOHN H. MCCONNELL BOULEVARD, SUITE 600

COLUMBUS, OHIO  43215.2673

TELEPHONE: +1.614.469.3939 • FACSIMILE: +1.614.461.4198

Direct Number:  (614) 281-3834
tbraun@jonesday.com

October 22, 2020

**VIA ELECTRONIC MAIL**
C.K. Lee, Esq.
Tenzin Tashi, Esq.
148 West 24th Street, 8th Floor
New York, New York 10011
cklee@leelitigation.com
tenzin@leelitigation.com

Re:  *Beaton v. Verizon New York Inc.,*
     Case No. 1:20-cv-00672-BMC

Dear Mr. Lee:

I am writing to respond to your October 15, 2020 correspondence ("Letter") in which you cite claimed deficiencies in Defendant Verizon New York Inc.'s responses to Plaintiff's Notice of Deposition Pursuant to Federal Rule of Civil Procedure 30(b)(6) ("30(b)(6) Notice"), Plaintiff's First Set of Document Requests ("Document Requests"), and Plaintiff's First Set of Interrogatories ("Interrogatories").

During our October 21 and October 22 telephonic meet and confer sessions, Defendant indicated that it was willing to resolve the outstanding discovery issues by broadening the scope of testimony to be provided in the scheduled 30(b)(6) deposition, and agreed to supplement certain interrogatory responses and to produce certain additional documents in response to Plaintiff's requests for "Rule 23 discovery."  We also provided you with the "hit report" for your expansive ESI requests (which identified nearly 85,000 documents, with families), and communicated to you that your revised search terms resulted in 58,821 documents, with families (and 39,345 documents without families).  As part of that discussion, we informed you that a search for "Beaton" or "Rawle" for the period corresponding to his employment yielded 3,451 documents, and invited you to provide a counter proposal of additional targeted terms for consideration.  You declined.

The intent of this correspondence is to provide further detail and clarify Defendant's position.  While will continue to work in good faith to resolve our differences, there are some clear lines of demarcation.  In particular, most of your Letter simply re-states your meritless request for broad, pre-certification discovery regarding your putative Rule 23 class.[1]  As

---

[1] Your Letter again changes your position on the breadth of class discovery you seek.  In the Complaint, Plaintiff stated that he sought to certify a New York *state*-wide class of Technicians and Escorts.  Your October 12

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MOSCOW • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO
SAN FRANCISCO • SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

C.K. Lee
Tenzin Tashi
October 22, 2020
Page 2

previously explained, Defendant is willing to provide certain "Rule 23" discovery with respect to the Central Avenue Garage where Plaintiff formerly worked. The extent of that agreement is outlined below. We believe it is a reasonable position to take that strikes the right balance given (i) Judge Cogan's decision that limited the conditionally certified FLSA class to Escorts who worked in the Central Avenue Garage in the three-years preceding his decision; (ii) the relevance and proportionality requirements under the Federal Rules of Civil Procedure; and (iii) Plaintiff's failure to point to any evidence in support of his claims in his written discovery responses, which we addressed in our October 14 correspondence and the October 21 telephonic meet and confer session.

### A.    Pre-Class Certification Discovery

Your Letter requests broad information regarding Technicians and Escorts in New York City, which you have clarified relates to your proposed Rule 23 class, based upon the statement that "[c]ourts in the Second Circuit have repeatedly held that plaintiffs are entitled to pre-certification discovery of documents regarding potential class members." Specifically, you cite Defendant's responses to the following discovery requests:

- 30(b)(6) Notice Topics No. 1, 2, 3, 7, 13, 7, and 18;

- Interrogatories No. 1, 2(b), 3, 4, 6, 9, and 14; and

- Document Requests No. 2, 3, 4, 6, 9, 10, 12, 13, 16, 19 and 22.

None of the cases Plaintiff cites are wage-hour-related and, here, Plaintiff could not meet even the much more "modest showing" required for conditional certification of his proposed state-wide FLSA class of Escorts and Technicians pursuant to 29 U.S.C. § 216(b). Despite Judge Cogan limiting the conditionally certified class to 15 Escorts at the Central Avenue Garage, you improperly continue to seek extremely burdensome, premature, and pre-certification discovery for hundreds of potential Rule 23 class members. *C.f. Burnett v. Wahlburgers Franchising LLC,* No. 16-cv-4602 (WFK) (CLP), 2017 WL 11504788, at *4-5 (E.D.N.Y. Dec. 6, 2017) (denying pre-certification discovery related to putative Rule 23 class members in hybrid FLSA/state law action).

---

correspondence stated that Plaintiff was only seeking discovery for the conditionally certified class of Escorts who worked in the Central Avenue garage. In our October 14 telephonic meet and confer, you again changed course stating that Plaintiff is seeking discovery for Escorts and Technicians currently or formerly employed "at all garage locations in New York City." As this letter explains, you are not entitled to any of the pre-certification discovery that you seek *whatsoever*, but Defendant responds based upon the latest iteration of Plaintiff's position.

JONES DAY

C.K. Lee
Tenzin Tashi
October 22, 2020
Page 3

      As you know from your past experience in *Zheng v. Good Fortune Supermarket Group (USA), Inc.*, No. 13-CV-(ILG), 2013 WL 5132023, (E.D.N.Y. Sept. 12, 2013), courts in the Eastern District of New York generally refuse to allow pre-certification discovery regarding potential Rule 23 class members "out of concern that plaintiffs' attorneys may be seeking such information to identify new clients, rather than to establish the appropriateness of certification." *Id.* at *8 n.9 (citing *Dziennik v. Sealift, Inc.,* No. 05-CV-2659, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006)). Numerous other cases confirm that the Eastern District of New York generally refuses to grant discovery regarding potential Rule 23 class members for this same reason, as well as because it is unnecessarily burdensome on the defendant. *See, e.g., Mitchel v. Fortress FS, LLC,* NO. 14-CV-2640 (RRM) (LB), 2014 WL 12776121, at *1 (E.D.N.Y. Oct. 22, 2014) (denying Plaintiff's motion to compel pre-certification discovery requests regarding putative Rule 23 class members, holding that such information was irrelevant to the plaintiff's claims, and expressing concern that the discovery sought was a fishing expedition to identify potential new clients); *Jenkins v. TJX Companies, Inc.,* No. 10-cv-3753 (ADS) (WDW), 2011 WL 1563677, at *2-3 (E.D.N.Y. Apr. 25, 2011) (denying plaintiff's request for pre-certification discovery related to Rule 23 class and noting that courts in the EDNY have expressed concern that a plaintiff seeking pre-certification Rule 23 class discovery "may have a purpose beyond establishing his or her own claim"); *Charles v. Nationwide Mut. Ins. Co.,* No. 09-cv-94 (ARR), 2010 WL 7132173, at *7-8 (E.D.N.Y. May 27, 2010) (declining plaintiff's motion to compel pre-certification Rule 23 discovery regarding putative class members based relevance concerns as well as extreme burden production of the information sought would have on the defendant).

      In its responses, Defendant has already agreed to produce the wage-hour policies (e.g., Code of Conduct and Work Rules) that apply to non-exempt employees, including Escorts and Technicians in the Central Avenue Garage, and the related training Plaintiff completed. Defendant additionally agreed to produce its non-harassment/non-retaliation policy that apply to all employees and the related trainings that Plaintiff's managers completed. Defendant also agreed to supplement its responses (where noted) if individuals file opt-in consent forms within the period defined by the Court.

      Without waiving the objections as set forth in its responses, and in a good faith effort to compromise, Defendant will provide the additional discovery specific to putative Rule 23 class members at the Central Avenue Garage that is set forth in Section B, below.

C.K. Lee
Tenzin Tashi
October 22, 2020
Page 4

**B.     Specific Responses**

    1.     <u>30(b)(6) Topics</u>

        a.     *Topic No. 1*

Defendant has already agreed to provide a deponent to testify generally as to the written policies regarding reporting time accurately, the means by which Escorts reported overtime, and the process for payment of overtime to Plaintiff and any opt-in plaintiffs.  Defendant will similarly provide a deponent to testify generally as to such policies and processes as they relate to Technicians in the Central Avenue Garage.

        b.     *Topic No. 2*

*See* supplemental response above.

        c.     *Topic No. 3*

*See* supplemental response above.

        d.     *Topic No. 7*

Defendant has already agreed to provide a deponent to testify generally as to the process for hiring Escorts in the Central Avenue Garage and the training that they receive/is made available to them regarding the Company's timekeeping and non-discrimination/non-retaliation policies.  Defendant will similarly provide a deponent to testify generally as to the same process and training as it relates to Technicians in the Central Avenue Garage.

        e.     *Topic No. 13*

Defendant has already produced the notice provided to Plaintiff when he was hired in 2017 and there is no allegation regarding the failure to provide wage notices in Plaintiff's Complaint.  Nevertheless, Defendant agrees to provide a deponent to testify generally as to its process for providing wage hour notices.

        f.     *Topics No. 17 and 18*

Defendant has already agreed to produce documents related to complaints located in its internal complaint systems or legal proceedings regarding racial hostile work environment and/or retaliation by Escorts at the Central Avenue Garage in the preceding three years, and stated that

JONES DAY

C.K. Lee
Tenzin Tashi
October 22, 2020
Page 5

it has no such records. Defendant additionally will agree to search its systems for any "internal complaints or allegations" and "lawsuits" alleging race discrimination, hostile work environment (race-based), or retaliation (based upon protected activity) across the Central Avenue Garage from 2017 to present (including employee roles other than Escort), and will agree to produce a witness to testify as to these complaints, allegations, lawsuits, or legal proceedings if they exist.

    2.      Interrogatories

        a.      *Interrogatory No. 1*

For the reasons addressed above, Defendant will not be providing contact information beyond the contact information ordered by the Court with respect to the conditionally certified FLSA class.

        b.      *Interrogatory No. 2(b)*

Beyond what Defendant has already agreed to produce as to Plaintiff and any opt-in plaintiffs, and subject and limited to its objections, Defendant will provide the following, pursuant to Rule 33(d): earning reports, time records, and pay stubs for Escorts and Technicians who worked in the Central Avenue Garage from February 6, 2014 to present. Outside of the 15 Escorts in the conditionally certified class, Defendant will redact the names and contact information from all such documents prior to production.

        c.      *Interrogatory No. 3*

Beyond Defendant's prior response, and subject and limited to its objections, Defendant will further agree to produce, identify any lawsuit, government charge, or complaints that allege off-the-clock work/denial of overtime in its internal complaint databases for any Technician who has worked out of the Central Avenue Garage from February 6, 2014 to present.

        d.      *Interrogatory No. 4*

Defendant agrees to supplement it response to this Interrogatory with respect to Technicians in the Central Avenue Garage.

        e.      *Interrogatory No. 6*

Defendant agrees to supplement its response to this Interrogatory with respect to how Technicians are hired into their positions at the Central Avenue Garage.

C.K. Lee
Tenzin Tashi
October 22, 2020
Page 6

       *f.*       *Interrogatory No. 9*

*See* above supplemental response to Interrogatory 2(b).

       *g.*       *Interrogatory No. 14*

For the reasons addressed above, Defendant will not be identifying and providing contact information beyond the contact information ordered by the Court with respect to the conditionally certified FLSA class.

    3.    <u>Document Requests</u>

       *a.*       *Request No. 2*

*See* above supplemental response to Interrogatory 2(b).

       *b.*       *Requests No. 3*

Defendant has already agreed identified and agreed to produce the employment policies that bear on Plaintiff's claims, including its the Code of Conduct, Work Rules and its non-discrimination/non-retaliation policy, along with certain related trainings that apply to non-exempt employees in the Central Avenue Garage. Defendant also stated that it will provide the Escort job description, and it attached a copy of the Technician job description to its opposition to Plaintiff's Motion for conditional certification. Defendant is not aware of any other "employee handbooks" or "employment manuals" that "detail its employment policies or discrimination policies." Plaintiff has provided no authority to support his claims that Defendant is required to search for all possible materials that could bear on its policies or the job duties of Escorts (or Technicians).

       *c.*       *Request No. 4*

*See* above supplemental response to Request No. 3.

       *d.*       *Request No. 6*

Defendant has already stated that it has not settled any claims alleging violations of the FLSA or NYLL brought by Escorts who worked out of the Central Avenue garage in the last three years. Defendant agrees to search for and identify any settlement involving either Escorts or Technicians who worked out of the Central Avenue Garage alleging off-the-clock/unpaid overtime claims from February 6, 2014 to present.

C.K. Lee
Tenzin Tashi
October 22, 2020
Page 7

      e.  *Request No. 9*

Plaintiff is not specific as to the claimed deficiency with respect to this request. Please advise based upon Defendant's agreement herein to supplement as to other discovery responses.

      f.  *Request No. 10*

Beyond what it has already agreed to produce, Defendant will additionally identify any off-the-clock/unpaid overtime "litigation" against Defendant by Escorts or Technicians who worked out of the Central Avenue Garage from February 6, 2014 to present, as well as any race discrimination, hostile work environment (race-based), or retaliation (based upon protected activity) "litigation" by anyone who worked out of the Central Avenue Garage from 2017 to present (including employee roles other than Escort).

      g.  *Requests 12 and 22*

In a good faith attempt to avoid a dispute as to Requests No. 12 and 22, Defendant will agree to search its systems for any other "internal complaints" and "settlement" regarding claims of race discrimination, hostile work environment (race-based), or retaliation (based upon protected activity) across the Central Avenue Garage from 2017 to present (including employee roles other than Escort) and produce any responsive, non-privileged documents located therein.

      h.  *Request No. 13*

*See* above supplemental response to Interrogatory No. 2(b).

      i.  *Request No. 16*

This request seeks substantially similar information as 30(b)(6) Notice Topic No. 13 – "initial and annual wage and hour notices required under the New York Labor Law" for "Plaintiff and Covered Employees." Defendant will agree to produce the notices provided to Escorts and Technicians who worked in the Central Avenue garage from February 6, 2014 to present. Outside of the 15 Escorts in the conditionally certified class, Defendant will redact the names and contact information from all such documents prior to production.

      j.  *Request No. 19*

*See* above supplemental response to Interrogatory No. 2(b) and Request No. 3.

JONES DAY

C.K. Lee
Tenzin Tashi
October 22, 2020
Page 8

      k.  Request No. 20

You identify Defendant's response to Plaintiff's Document Request No. 20 (regarding video surveillance footage) as deficient because such footage could "corroborate when Plaintiff arrived to/left work and whether off-the-clock work existed." Video surveillance footage of the Central Avenue Garage is maintained in the normal course for only 100 days and, as a result, no video surveillance footage of Plaintiff – who was terminated on April 5, 2019 – exists. Defendant, however, will agree to assess the expense and burden associated with producing an agreed upon limited number of days of video surveillance footage from the Central Avenue Garage and continue to meet and confer on this issue.

      l.  Request No. 31

Plaintiff identifies Defendant's response to Plaintiff's Document Request No. 31 as deficient because the "parameters of the requested e-discovery are specifically limited to the listed search terms." Defendant continues to object that your request for e-discovery is overly broad, unduly burdensome, and not proportional to the needs of discovery in this action. As drafted, Document Request No. 31 would require Defendant to review nearly 65,000 emails and over 85,000 total documents with families. Defendant has already agreed to search the mailboxes of individuals listed in its Initial Disclosures, limited to the period that Plaintiff was employed by Defendant, with the search terms "Rawle" and "Beaton," which amount to 3,451 documents with families. We further invite you, as we did on October 22, to propose revised search terms tailored to Plaintiff's claims.

               Very truly yours,

               *s/ Tonya B. Braun*
               Tonya B. Braun

cc: Wendy C. Butler (via electronic mail)
   Justin D. Martin (via electronic mail)